### SCHOOL DISTRICT OF CITY OF PONTIAC *v.* CITY OF PONTIAC.

1. CONSTITUTIONAL LAW—AMENDMENT—PUBLICATION—ELECTION.

   In determining what constitutes compliance with constitutional requirement as to publication of proposed amendment to Constitution, in submitting it to electors for adoption, purpose prompting inclusion of such amendment in Constitution is of prime importance (Const., art. 17, § 3).

2. SAME—WHEN OTHER PROVISIONS SHOULD BE PUBLISHED.

   In case proposed constitutional provision amends or replaces ("alters or abrogates") specific provision of Constitution, then such provision should be published along with proposed amendment, but other provisions which are still operative, though possibly they may need thereafter to be construed in conjunction with amending provision, need not necessarily be published (Const., art. 17, § 3).

3. TAXATION—INHERENT IN STATE GOVERNMENT.

General power of taxation has been and is inherent in State government.

4. CONSTITUTIONAL LAW—PUBLICATION OF OTHER PROVISIONS—AMENDMENT.

Amendment to Constitution by adding section 21 to article 10, limiting amount of taxes assessable against property in any one year to 15 mills, being new section which did not "alter or abrogate" any other provision of Constitution, publication of other provisions was not necessary in order to comply with Constitution in submitting it to electors for adoption (article 17, § 3).

5. SAME—AMENDMENT—REVISION.

Objection that adoption of said section 21, art. 10, should have been accomplished in manner provided in Constitution for revision (article 17, § 4) rather than that provided for amendment (article 17, § 3), *held*, without merit; said section having been legally adopted as amendment by way of addition to Constitution.

6. SAME—CONSTRUCTION—INTENT.

Object of construction, as applied to written Constitution, is to ascertain and give effect to intent of people in adopting it.

7. SAME—TAX LIMITATION AMENDMENT—CHARTERED MUNICIPALITIES EXEMPT FROM TAX-LIMITATION AMENDMENT.

Cities chartered as home-rule cities (Const., art. 8, §§ 20, 21; 1 Comp. Laws 1929, § 2228 *et seq.*), cities having special charters with tax limitation provision, and cities of fourth class and villages organized under Constitution, art. 8, § 21; 1 Comp. Laws 1929, § 1465 *et seq.*, having adopted their own tax limitation, are not subject to 15-mill property tax limitation provided for in amendment to Constitution (article 10, § 21), except that if any part of said 15 mills should be allocated to them by legislature, it must be included in total amount assessable for city or village purposes under charter limitation.

8. SAME—ASSESSMENT DISTRICTS SUBJECT TO TAX-LIMITATION AMENDMENT.

In assessment districts other than cities and villages having charter tax limitation, said amendment should be applied unless otherwise determined by requisite vote of electors as provided for in said amendment (Const., art. 10, § 21).

9. SAME—DUTY OF COURTS TO INTERPRET.
   Constitutional duty of courts is to interpret and apply law, not to enact laws.

10. TAXATION—POWER VESTED IN LEGISLATURE TO ALLOCATE TAXES.
    Determination of sources of tax revenue and apportionment of taxation require legislative action, and therefore court is not vested with power to allocate taxes raised under 15-mill tax limitation provided for in constitutional amendment (article 10, § 21).

11. SAME—MUNICIPAL CORPORATIONS—INJUNCTION—ALLOCATION.
    In suit by school district to restrain city from adopting proposed budget for municipal purposes until legislature had taken action to allocate revenue derived from 15-mill property tax as limited by constitutional amendment (article 10, § 21), relief was properly denied, in absence of showing that city had in any way invaded school district's rights.

ON MOTION FOR REHEARING.

12. SAME—PARTICIPATION OF MUNICIPALITIES IN 15-MILL TAX IS LEGISLATIVE MATTER.
    Municipalities having charter provision fixing maximum taxation limitation may participate in allocation of 15-mill tax assessable under constitutional amendment (article 10, § 21), but whether they shall so participate depends on whether any part is allocated to them by legislature; allocation being matter for legislative determination.

Appeal from Oakland; Gillespie (Glenn C.), J. Submitted March 1, 1933. (Docket No. 169, Calendar No. 37,147.) Decided March 14, 1933. Rehearing applied for March 21, 1933. Rehearing denied April 5, 1933.

Bill by School District of the City of Pontiac, a municipal corporation, against City of Pontiac, a municipal corporation, to restrain adoption of a proposed budget. County of Oakland and Attorney General intervened as defendants. Bill dismissed. Plaintiff, defendant, and intervening county appeal. Affirmed.

*Andrew L. Moore* and *James H. Lynch,* for plaintiff.

*William A. Ewart,* for defendant.

*Arthur P. Bogue,* Prosecuting Attorney, and *Robert D. Heitsch,* Assistant Prosecuting Attorney, for intervening county.

*Patrick H. O'Brien,* Attorney General, and *Francis K. Young,* for intervening Attorney General.

*Clarence E. Wilcox,* Corporation Counsel of the City of Detroit, *John H. Witherspoon,* Assistant Corporation Counsel, *John R. Rood, Miller, Canfield, Paddock & Stone,* and *A. M. Cummins, amici curiæ.*

NORTH, J.  This appeal from a decree entered in the circuit court of Oakland county, in chancery, dismissing plaintiff's bill of complaint presents for review the following questions:

(1)   Was section 21, article 10, legally adopted and made a part of the Michigan Constitution at the November, 1932, election?

(2)   If legally adopted, what is its proper construction in the particulars hereinafter noted?

The amendment reads:

"Section 21.  The total amount of taxes assessed against property for all purposes in any one year shall not exceed one and one-half per cent. of the assessed valuation of said property, except taxes levied for the payment of interest and principal on obligations heretofore incurred, which sums shall be separately assessed in all cases: *Provided,* That this limitation may be increased for a period of not to exceed five years at any one time, to not more than a total of five per cent. of the assessed valuation, by a two-thirds vote of the electors of any assessing

district, or when provided for by the charter of a municipal corporation: *Provided further,* That this limitation shall not apply to taxes levied in the year 1932.''

The Constitution (article 17) provides how amendments may be originated and adopted. It can be amended only in the manner therein provided. *Scott* v. *Secretary of State,* 202 Mich. 629. Failure to comply with the requisite provisions would defeat the proposed amendment. 6 R. C. L. p. 31; *Simpson* v. *Hill,* 128 Okla. 269 (263 Pac. 635, 56 A. L. R. 706). The above-quoted amendment was proposed by the requisite number of qualified electors, submitted at the November, 1932, election, and received the necessary votes for its adoption. Validity of the amendment is challenged on the ground of failure of the secretary of State to comply with article 17, § 3, of the Constitution, which provides:

''All proposed amendments to the Constitution submitted to the electors shall be published in full, with any existing provisions of the Constitution which would be altered or abrogated thereby, and a copy thereof shall be posted at each registration and election place. Proposed amendments shall also be printed together with any other special questions to be submitted at such election in full on a single ballot separate from the ballot containing the names of candidates or nominees for public office.''

The amendment was published in full with the following notice or comment:

''This is a new section to limit the amount of taxes assessed against property. This proposed amendment, if adopted, will limit the total amount of taxes assessed against property for all purposes in any one year (except 1932) to one and one-half per cent. of the assessed valuation, except taxes levied for

the payment of obligations already incurred; provided that said limitation may be increased for not to exceed five years at any one time to not more than five per cent. of the assessed valuation by a two-thirds vote of the electors of any assessing district or when provided for by the charter of a municipal corporation.''

The exact objection urged is that this amendment alters or abrogates some 16 or 18 other provisions of the Constitution, and that failure to publish the ''existing provisions of the Constitution which would be altered or abrogated'' nullifies the attempted amendment. Some of the provisions as to which this argument is urged are: Article 8, §§ 20, 22–24, 26; article 10, §§ 1–3, 5, 10; article 11, §§ 9, 10, 14; article 15, § 2. We think this position is not tenable. The duty of submitting all proposed constitutional amendments initiated by the people is placed by the Constitution upon the secretary of State, article 17, § 2. Any provision as to such duty should, if possible, be so construed as to make the requisite course of conduct entirely clear and plain. Perplexities and uncertainties will be pitfalls for the officer charged with this duty regardless of a zealous and honest effort to fully comply with the law, and the officer's nonperformance might jeopardize and possibly nullify the effort of electors to amend the Constitution. The instant case affords an apt illustration of such difficulties. Here able counsel disagree which, if any, of the other 16 or 18 constitutional provisions are altered by the amendment. It may almost be said that no two agree that certain of these provisions are altered and others are not. How then could the secretary of State determine or be advised with any degree of certainty which of these other provisions of the Constitution he should publish? As hereinafter noted a more clear and definite

meaning than that asserted by appellants must be given to the constitutional provision last above quoted.

In determining what constitutes compliance with the constitutional requirement as to publication, a matter of prime importance is the purpose that prompted the people of the State of Michigan to include such a provision in the Constitution. All will agree that this was a means adopted by which it was believed the elector would be definitely advised as to the purpose of the proposed amendment and what provision of the constitutional law it modified or supplanted. Being so advised, the elector could intelligently determine whether his vote would be for adoption or rejection. But the ordinary elector, not being a constitutional lawyer, would be confused rather than helped by a publication of all the other constitutional provisions which were or might be directly or only remotely, and possibly only contingently, affected by the proposed amendment. We think the requirement in substance is this: That in case a proposed constitutional provision amends or replaces ("alters or abrogates") a specific provision of the Constitution, that such provision should be published along with the proposed amendment; that other provisions which are still operative, though possibly they may need thereafter to be construed in conjunction with the amending provision, need not necessarily be published.

This amendment is a wholly new and additional constitutional provision in this State. It is not a grant of power, but instead a constitutional limitation upon the exercise of the general power of taxation. Heretofore our Constitution contained no such general limitations. The general power of taxation has been and is inherent in State government.

1 Cooley on Taxation (4th Ed.), §§ 64, 102. Prior to this amendment, the extent to which the legislature might authorize the exercise of this power for public purposes was without general limitation, though there were numerous special limitations in the Constitution. This was clearly pointed out in the first sentence of the notice to the electors which was published with this proposed amendment. It read: "This is a *new section* to limit the amount of taxes assessed against property." Being a new section, which did not specifically and definitely "alter or abrogate" any other provision of the Constitution, it follows that there was no other provision of the Constitution to be published in order that there might be full compliance with article 17, § 3.

The validity of the 1932 amendment is further challenged on the ground that it is not an amendment, but instead it is so far reaching in its modification and restriction of governmental powers that it amounts to a revision of the State Constitution, and, not having been accomplished in the manner provided in the Constitution for revision (article 17, § 4), it is wholly ineffective and invalid. We are fully convinced that the adoption of this new limitation upon the power of taxation, under the construction hereinafter placed upon it, does not so interfere with or modify the operation of governmental agencies as to render it other than an amendment by way of an addition to the Constitution. As an amendment it was legally adopted and became a part of our fundamental law.

We are asked to construe in certain particulars this amendment to the Constitution. Unfortunately it is couched in language so ambiguous that able counsel after much study and reflection are far from being in accord as to its proper construction.

Even some of those who were instrumental incident to initiating the amendment seem to differ widely as to what was to be accomplished thereby. Because of such ambiguity, it becomes the duty of the court to construe the amendment as worded in the light of established rules for the construction of constitutional provisions. Much has already been written concerning proper rules for such construction. Extended review of these rules would not be particularly helpful. Fortunately the pertinent fundamental guides for such construction have been clearly and concisely stated in former decisions of this court:

"It is a maxim that the object of construction, as applied to a written Constitution, is to ultimately ascertain and give effect to the intent of the people in adopting it.    *    *    *

"In construing constitutional provisions where the meaning may be questioned, the court should have regard to the circumstances leading to their adoption and the purpose sought to be accomplished." *Kearney* v. *Board of State Auditors,* 189 Mich. 666.

This appeal presents for determination the proper construction of the phrase *"or when provided for by the charter of a municipal corporation"* as embodied in the context of this amendment. The charter of the city of Pontiac adopted under the so-called home-rule act (1 Comp. Laws 1929, § 2228 *et seq.*), vested the city with power to levy annually a general tax upon real and personal property not exceeding two per cent. of the assessed valuation. The tax so authorized was for the sole use of the city. The question now presented is this: Does the 1932 constitutional amendment limit the annual tax assessment for State, county, school, and city purposes to one

and a half per cent. in the city of Pontiac (except taxes levied to meet existing indebtedness); or does the city, because of the exception contained in the above-quoted phrase, still have power to tax for municipal purposes to the maximum charter limitation of two per cent.? The city's contention as stated in its brief is:

"Under the proviso in this amendment the city of Pontiac is not limited to the one and one-half per cent., but the charter tax limitation of two per cent., in existence at the time this amendment was adopted, is in full force and effect. * * *

"The amendment should be interpreted so as to be agreeable to the already existing law of the Constitution of this State, granting home rule to cities and also such an interpretation should be given as will uphold the present charter provision of two per cent., which is a law approved by the defendant city."

The opposing contention is that, aside from taxation to meet indebtedness, the amendment limits taxation against property to one and one-half per cent. of assessed valuation notwithstanding charter provisions to the contrary, unless and until an increase not to exceed five per cent. of the assessed valuation is authorized by a vote of the electors or by a charter amendment adopted subsequent to the 1932 constitutional amendment.

Careful study of the amendment leads to these conclusions: Clearly the intent was to provide by the fundamental law of the State, which had not theretofore contained such provision, a general limitation upon the exercise of the taxing power of the State. The evil or abuse sought to be remedied was excessive taxation imposed by governmental agencies without the consent of those upon whom

the burden was placed. At the outset, the framers of the proposed amendment, and later the people who considered its adoption, were confronted with the legal proposition that contractual obligations could not be impaired, and therefore the general exception to the proposed limitation of taxation was made by excepting "taxes levied for the payment of interest and principal on obligations heretofore incurred." We are not here concerned with this particular limitation, except to note that in drafting the amendment, as well as in its adoption, the people were mindful of existing conditions and sought to so frame the amendment as to be in accord with such existing conditions. This led to embodying in the amendment the above-quoted provision as the first exception to its general limitation on taxation.

Reading further in the amendment, it clearly appears it also occurred to those interested in its fram-. ing and adoption that certain conditions might already exist or might thereafter arise in consequence of which the electors of any assessing district might conclude that the one and one-half per cent. constitutional limitation was unduly restrictive. Such a condition might have prevailed at the time of the adoption of the amendment in a school district which found itself confronted with the necessity of engaging in an extensive building program, or such a condition might come about in the district at any time in consequence of destruction of its buildings by fire or other disaster. Hence the provision in the amendment that the specified limit might be increased for a period not exceeding five years at any one time to the maximum limit of five per cent. of the assessed valuation by a two-thirds vote of the electors of the assessing district. This provision left in the possession of each assessing district power to provide for local needs for which the allocated portion

of the one and one half per cent. tax might be deemed to be inadequate; and such provision constituted a second exception to the general taxation limitation contained in the amendment.

This brings us to what a fair reading of the amendment indicates is a third exception to the general limitation of taxation, which exception the framers and adopters of this amendment seemingly deemed essential, and which we think gave rise to including in the amendment the words *"or when provided for by the charter of a municipal corporation."* At this point consideration was evidently given to the well-known fact that in comparatively recent years there had developed in this State the so-called "home-rule" feature of our government. Provision therefor was embodied in the Constitution of 1908 (article 8, §§ 20, 21). This was followed by the legislative enactment of the home-rule bill (act No. 279, Pub. Acts 1909 [1 Comp. Laws 1929, § 2228 *et seq.*]). In the meantime many cities in Michigan have been chartered under the above-cited constitutional provision and legislative enactment. Under the constitutional provision, by the home-rule act, it was sought fundamentally to place in the hands of the electors of the cities chartered thereunder increased power of local governmental control. To this purpose the home-rule act permitted a charter provision authorizing taxation for local municipal needs to the extent of two per cent. of the assessed valuation of taxable property (1 Comp. Laws 1929, § 2230). Whether the electors of a home-rule city would vest their city government with power to tax to the extent of one per cent. or to the extent of two per cent. was a matter of local determination. In the exercise of that power locally, the city of Pontiac embodied in its home-rule charter the two per cent. limitation. Its taxing agencies, the same as those

in other cities, were operating under and exercising this grant of power at the time the 1932 constitutional amendment was in the process of being formulated and adopted. Surely this important condition of State affairs was not overlooked in the framing and consideration of the amendment; and to us it seems that knowledge of these various charter provisions under the home-rule act called to the attention of the framers of this constitutional amendment that a third exception should be embodied therein as to the general limitation they proposed to put upon the exercise of the taxing power. Under constitutional provisions and within the specified limitations, this taxing power had already been delegated to various cities in Michigan; and, as noted above, this fact was well known. Surely it would be a strange governmental operation, wholly inconsistent with the ordinary methods of accomplishing that result (if not entirely without precedent) that the charters of the various cities of this State should be summarily amended by a constitutional provision which in spirit, if not in letter, was diametrically opposed to the recently developed policy of home-rule government in this State. This being true, we are fully convinced that the framers and adopters of this constitutional amendment found themselves confronted with a condition which prompted this third exception to the general limitation of the exercise of the taxing power in cities already constitutionally vested with the power to tax in excess of the proposed limitation. To meet this situation, the quoted phrase was embodied, and for that reason it should be held to mean that "this limitation may be increased" in the cities whose charters already empower them to levy a tax for municipal purposes in excess of the amount which the city might levy under the terms of the 1932 amendment. This con-

struction, we think, is in harmony with the spirit and purpose of the amendment, in that it applies the general limitation of one and one-half per cent. to all taxing districts except those wherein by local action a higher percentage of taxation for local needs is expressly authorized; and in these excepted districts the 1932 constitutional limitation is effective as to State, county, and school taxes. We have not overlooked the argument that the construction of this amendment above outlined does not fit perfectly into its phraseology. No plausible construction has been suggested which does not clash equally as much or even more or lead to governmental difficulties which strongly militate against such suggested construction. At the expense of repetition, we state again that (disregarding the exception of taxes levied for payment of debts), we think the amendment must be construed as though it read:

The total amount of taxes assessed against property for all purposes in any one year shall not exceed one and one-half per cent. of the assessed valuation of said property: *Provided,* That this limitation may be increased for a period of not to exceed five years at any one time to not more than a total of five per cent. of the assessed valuation, by a two-thirds vote of the electors of any assessing district, or (that this limitation may be increased) when provided for by the (present or future) charter of a municipal corporation.

In the foregoing, reference has been made to the so-called home-rule cities, but we think the same result would follow as to cities having special charters with like provisions as to the exercise of the power of taxation. The result of the above construction is that the 1932 amendment neither increased nor decreased the charter power of a city to levy taxes for its municipal purposes. If in the allocation of

general taxes assessed under the one and one-half per cent. constitutional provision a portion of the funds necessary to meet city expenses are to be raised, such amount must be included in the total amount assessed for city purposes in ascertaining whether the city tax exceeds the amount provided in the city's charter.

With villages and fourth-class cities much the same result follows from the foregoing construction of the 1932 amendment. By constitutional and statutory provisions (Constitution, article 8, § 21; 1 Comp. Laws 1929, § 1465 *et seq.*; § 1763 *et seq.*; § 1796 *et seq.*), these municipalities, much like home-rule cities, have been vested with power of regulating taxation within specified limitations. They possessed this power of local self-government prior to the 1932 constitutional amendment. By the exercise of this power incident to incorporation or subsequently by positive or negative action under the statutes, each has adopted its own limitation or regulation. The right to exercise this power of local self-government was not changed by the constitutional amendment. The electors of the respective villages and fourth-class cities still have the power, by virtue of and within the above noted constitutional and statutory provisions, to determine and fix the limits within which they may be subjected to taxation for local purposes.

In passing, it may also be stated we think there is much force in the argument set forth in the brief for the city of Pontiac that in the framing and adoption of this amendment there was in contemplation the fact that, outside of chartered cities, there was no general limitation upon the exercise of the power of taxation; and that in assessment districts other than cities the limitation in the amendment should

be applied unless otherwise determined by the requisite vote of the electors; but that in cities having a charter provision action of this character had already been taken by the local electors in adopting their various city charters, and therefore the action so taken should be respected by excepting such districts from the general limitation of one and one-half per cent. embodied in the amendment in so far as the power of taxation was exercised for the city's local needs.

This appeal also presents the question: Have courts the power to allocate property taxes raised under the one and one-half per cent. constitutional amendment? We think it self-evident that such power is not vested in the courts. The constitutional amendment contains no provision for a division of the total one and one-half per cent. taxes between the State, counties, cities, villages, townships, or school districts. Nor is there any statutory provision relative to such division or allocation. The constitutional duty of courts is to interpret and apply the law, not to enact laws. Taxation is a legislative power vested by the Constitution in the legislative branch of the State government. Determination of the sources of tax revenue and the apportionment of taxation require legislative action. 1 Cooley on Taxation (4th Ed.), §§ 64, 74; 2 Cooley on Taxation (4th Ed.), § 539. As noted, this amendment to the Constitution contains no provision for allocation of taxes. It is not self-executing. Constitutional provisions as to taxation generally are not self-executing; but require legislative action. 1 Cooley on Taxation (4th Ed.), § 132. The trial court correctly held it was not vested with power to allocate taxes raised under this one and one-half per cent. constitutional amendment. Legislative action is requisite.

The remaining question presented by this appeal is raised by the following assignment of error:

"The court erred in his findings upon which the decree was predicated that any home-rule city has the right to adopt a budget and appropriate a portion of the 15-mill tax revenue before the legislature has taken action to allocate to the respective units of government any share of such tax."

In the instant case the plaintiff school district sought to enjoin the city of Pontiac, in which the school district is principally located, from adopting a proposed budget for its municipal purposes. Plaintiff's contention is that the city had no right to proceed to the adoption of a budget before the legislature had taken action relative to allocation of the revenue derived from the one and one-half per cent. property tax. The trial judge denied the injunctive relief sought, and we think properly so, because plaintiff did not establish the essential fact that in making up its budget the city in any way invaded plaintiff's rights. As was held in the circuit, in the absence of statutory enactment allocating the tax raised under the one and one-half per cent. provision, the court was powerless to determine whether the defendant city in fixing its budget had exceeded its rights.

The decree dismissing the bill of complaint is affirmed.

The questions presented are of public importance, the State and the county of Oakland were permitted to intervene, and various parties have filed briefs *amici curiæ*. No costs will be awarded.

McDONALD, C. J., and CLARK, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.

ON MOTION FOR REHEARING.

PER CURIAM.  Plaintiff's motion for rehearing having been duly considered, it is ordered that said motion be and the same is hereby denied.  In connection with such denial, the court reiterates its holding in the opinion already filed, that municipalities having a charter provision fixing a maximum taxation limitation may participate in the allocation of the 15-mill tax assessable under the 1932 constitutional amendment.  This is a necessary inference from the following portion of our opinion:

"If in the allocation of general taxes assessed under the one and one-half per cent. constitutional provision a portion of the funds necessary to meet city expenses are to be raised, such amount must be included in the total amount assessed for city purposes in ascertaining whether the city tax exceeds the amount provided in the city's charter."

Whether or not a chartered municipality will receive any portion of the tax assessed under the 15-mill provision depends upon whether any part of the tax is allocated to such municipality.  Allocation is a matter for legislative determination.  No costs on this motion.