CITY OF HAZEL PARK *v.* MUNICIPAL
FINANCE COMMISSION.

1. CONSTITUTIONAL LAW—TAX LIMITATION—MUNICIPAL CORPORA-
   TIONS.
   The 15-mill tax limitation in the amendment of the Constitution
   does not apply to home-rule cities which come within the ex-
   ceptions therein noted (Const. 1908, art. 10, § 21, as added in
   1932).

2. SAME—LEGISLATURE—CHARTERS—MUNICIPAL CORPORATIONS.
   The legislature may modify the charters of. municipal corpora-
   tions at will as the State retains authority to amend charters
   and enlarge and diminish the powers of such corporations.

3. MUNICIPAL CORPORATIONS—CHARTERS—CONSTITUTIONAL . LAW—
   STATUTES.
   Every municipal charter is subject to the Constitution and gen-
   eral laws of this State (Const. 1908, art: 8, §§ 20, 21).

4. SAME—BOND ISSUES APPROVED BY ELECTORATE—STATUTES—CHAR-
   TERS—TAXATION.
   Provision of municipal finance act that no limitation in any
   statute or charter should prevent the levy and collection of
   the full amount of taxes required to pay a bond issue which
   has been approved by the electors of a municipality and the
   municipal finance commission controls rather than tax limita-
   tion within city charter where latter limitation would preclude
   a levy and collection of a tax sufficient to pay necessary mu-
   nicipal expenses and principal and interest on bond issue for
   sewage disposal system, approved by electors (Const. 1908,
   art. 8, §§ 20, 21; art. 10, § 21, as added in 1932; 1 Comp.
   Laws 1929, § 2228 *et seq.*, as amended; Act No. 202, chap. 7,
   § 1a, Pub. Acts 1943, as added by Act No. 300, Pub. Acts
   1945).

5. SAME—STATE AGENCIES—MODIFICATION OF CHARTERS.
   Municipal corporations are State agencies, and, subject to con-
   stitutional restrictions, legislature may modify corporate char-
   ters of municipal corporations at will.

6. SAME—CONSTITUTIONAL LAW.

Powers are granted to municipal corporations as State agencies to carry on local government, and State has authority to amend their charters and enlarge or diminish their powers.

7. SAME—LEGISLATURE—REGULATION OF INDEBTEDNESS—TAXATION.

The legislature is expressly authorized by the Constitution to regulate the amount of municipal indebtedness and the rate of taxation of cities (Const. 1908, art. 8, § 20).

8. CONSTITUTIONAL LAW—IMPAIRMENT OF CONTRACTS.

The legislature may increase or decrease limit of bonded indebtedness and rate of taxation for municipal purposes, subject to prohibition of State and Federal Constitutions that such legislation shall not operate so as to impair obligation of contracts by abrogating or lessening means of their enforcement.

9. MUNICIPAL CORPORATIONS—LEGISLATURE—TAXATION—REGULATION OF INDEBTEDNESS.

The power vested by the Constitution of this State in the legislature to limit the rate of taxation of cities for municipal purposes and restrict their powers of borrowing money and contracting debts is complete in itself and unrestricted.

10. SAME—CHARTERS—STATUTES.

Where a city charter is silent upon a subject or different than pertinent statutory provision, the statute controls and must be read into the charter.

11. CORPORATIONS—POWER TO AMEND OR REPEAL CHARTERS OF PRIVATE CORPORATIONS.

Rule that corporate charters in which no power of amendment or repeal is retained, when accepted, constitute contracts between State and corporation, applies to private corporations only.

12. STATUTES—CONSTRUCTION BY GOVERNMENTAL DEPARTMENTS.

The construction placed upon statutory provisions by any particular department of government for a long period of time, although not binding upon the courts, should be given considerable weight.

13. COSTS—PUBLIC QUESTION—MUNICIPAL CORPORATIONS—BONDS—NOTICE OF SALE.

No costs are allowed in mandamus proceeding by a city against the municipal finance commission to compel adoption of a particular form of notice of sale of bonds, a public question being involved (Const. 1908, art. 8, §§ 20, 21; art. 10, § 21,

as added in 1932; 1 Comp. Laws 1929, § 2228 *et seq.,* as amended; Act No. 202, chap. 7, § 1a, Pub. Acts 1943, as added by Act No. 300, Pub. Acts 1945).

Mandamus by City of Hazel Park, a municipal corporation, to compel the Municipal Finance Commission to approve the form of notice of sale of sewage disposal system bonds. Submitted January 14, 1947 (Calendar No. 43,629.) Writ denied April 17, 1947.

*Carl A. Braun,* for plaintiff.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *G. Douglas Clapperton,* Assistant Attorney General, for defendant.
*Amici Curiae:*

City of Detroit, by *William E. Dowling,* Corporation Counsel of Detroit, *Paul T. Dwyer,* Chief Assistant Corporation Counsel, and *John G. Dunn,* Assistant Corporation Counsel.

Paul E. Worley, Hazel Park taxpayer, by *Bodman, Longley, Bogle, Middleton, & Armstrong.*

*Miller, Canfield, Paddock & Stone.*

BOYLES, J. Plaintiff has filed a petition asking that a writ of mandamus be issued directing the defendant State municipal finance commission to approve a certain form of notice of sale of $416,000 sewage disposal system bonds in the form submitted to it by said city. Order to show cause was issued, defendant's answer and return has been filed, and arguments heard in open court. Briefs have been filed by counsel for both parties, and also, by leave

of court, briefs have been filed as *amici curiae* by the corporation counsel of Detroit, by counsel for a taxpayer of the plaintiff city, and by counsel engaged in giving opinions to municipalities and purchasers as to the validity of municipal bonds.

The facts are not in dispute. The plaintiff is a municipal corporation in the county of Oakland, State of Michigan, incorporated under the provisions of Act No. 279, Pub. Acts 1909, as amended (city home-rule act, 1 Comp. Laws 1929, § 2228 *et seq.*, as amended [see Stat. Ann. § 5.2071 *et seq.*]), pursuant to electoral vote on September 22, 1941. Its original charter was adopted at an election held on January 5, 1942, and contained a tax limitation of 15 mills for city purposes. On April 1, 1946, section 12.9 of the city charter was amended so as to provide for an extra 3-mill tax levy in addition to the 15 mills above mentioned, where such additional levy may be necessary in order to meet maturing bond principal and interest. At the same election on April 1, 1946, the electors of the city of Hazel Park approved the issuance of said $416,000 general obligation bonds for additions and extensions to the city sewage disposal system. On November 13, 1946, the city council authorized the issuance of the above-mentioned bonds. Pursuant to the requirements of Act No. 202, Pub. Acts 1943, as amended (Comp. Laws Supp. 1945, § 2689–21 *et seq.*, Stat. Ann. 1946 Cum. Supp. § 5.3188 [1] *et seq.*), application was made to the defendant municipal finance commission for permission to issue said bonds, and for approval of the form of the notice of sale thereof. The municipal finance commission granted permission for the issuance of the bonds, but refused to approve the form of the notice of sale as submitted by the city. It did, however, approve a notice of sale identical in form to that adopted by

the city except for the deletion of the following sentence:

"The bonds will be the general obligations of the city payable from ad valorem taxes within the 1.8 per cent. charter tax limit for city purposes,"

and the insertion of the following sentence in lieu thereof:

"The bonds will be the general obligations of the city payable from ad valorem taxes without limitation as to rate or amount."

The defendant municipal finance commission takes the position that the Michigan Constitution (1908), art. 10, § 21, as added in 1932, does not create a tax limitation for cities and villages but that they are excepted therefrom, and that the provision in Act No. 202, chap. 7, § 1a, Pub. Acts. 1943, as added by Act No. 300, Pub. Acts 1945 (Comp. Laws Supp. 1945, § 2689–91a, Stat. Ann. 1946 Cum. Supp. § 5.3188 [45a]), requiring payment of maturing bond principal and interest from unlimited taxes notwithstanding any charter tax limitation, is not repugnant to the Constitution but is applicable to the city of Hazel Park and other cities and villages.

The plaintiff city of Hazel Park denies this contention and seeks in this action to secure a writ of mandamus requiring the municipal finance commission to approve the form of notice of sale as submitted, which notice provides that the bonds will be payable from ad valorem taxes within the 1.8 per cent. charter tax limit for city purposes.

Counsel for the plaintiff phrases the question before us for decision as follows:

"Do the provisions of section 21 of article 10 of the Michigan Constitution include city and village taxes within the 15-mill tax limitation but with the

right of any such municipality to increase such limi-
tation by a present or future charter provision?''

Section 21 of article 10 of the State Constitution,
generally referred to as the 15-mill tax limitation,
was adopted at the general election November 8,
1932, effective December 8, 1932.  It is as follows:

''The total amount of taxes assessed against prop-
erty for all purposes in any one year shall not ex-
ceed one and one-half per cent. of the assessed valua-
tion of said property, except taxes levied for the
payment of interest and principal on obligations
heretofore incurred, which sums shall be separately
assessed in all cases: Provided, That this limitation
may be increased for a period of not to exceed five
years at any one time, to not more than a total of
five per cent. of the assessed valuation, by a two-
thirds vote of the electors of any assessing district,
or when provided for by the charter of a municipal
corporation: Provided further, That this limitation
shall not apply to taxes levied in the year 1932.''

Plaintiff, relying mainly on what was said by this
Court in *School District of City of Pontiac v. City
of Pontiac,* 262 Mich. 338, contends that the said
15-mill tax limitation amendment as construed by
this Court places city and village taxes within the
15-mill tax limitation, but provides that as to such
municipalities the limitation may be increased when
provided for by the present or future charter of such
municipal corporation.  Plaintiff relies on that part
of the opinion in the *Pontiac Case, supra,* wherein it
was said (p. 351):

''At the expense of repetition, we state again that
(disregarding the exception of taxes levied for pay-
ment of debts), we think the amendment must be
construed as though it read:

''The total amount of taxes assessed against prop-
erty for all purposes in any one year shall not ex-

ceed one and one-half per cent of the assessed valuation of said property: *Provided,* That this limitation may be increased for a period of not to exceed five years at any one time to not more than a total of five per cent. of the assessed valuation, by a two-thirds vote of the electors of any assessing district, or (that this limitation may be increased) when provided for by the (present or future) charter of a municipal corporation.

"In the foregoing, reference has been made to the so-called home-rule cities, but we think the same result would follow as to cities having special charters with like provisions as to the exercise of the power of taxation. The result of the above construction is that the 1932 amendment neither increased nor decreased the charter power of a city to levy taxes for its municipal purposes."

*Simonton* v. *City of Pontiac,* 268 Mich. 11, is not contrary to the conclusions reached in *School District of City of Pontiac* v. *City of Pontiac, supra.* In the *Simonton Case* it was held that the city of Pontiac was bound to take care of its debt service for 1934, by the provisions of Act No. 273, Pub. Acts 1925; that the 15-mill amendment (Const. 1908, art. 10, § 21) did not apply. The defendant municipal finance commission refers to and relies on the following provision in the municipal finance act (Act No. 202, chap. 7, § 1a, Pub. Acts 1943, as added by Act No. 300, Pub. Acts 1945):

"No limitation in any statute or charter shall prevent the levy and collection of the full amount of taxes required by this section for the payment of debts, but nothing herein shall authorize the levy of a tax for any other purpose exceeding the existing statutory or charter tax limitation."

The similar provision in the earlier statute formed the basis for decision in the *Simonton Case.*

The 15-mill amendment was first construed by the Court in *School District of City of Pontiac* v. *City of Pontiac, supra.* The school district sought to enjoin the city from adoption of a proposed budget. After holding that the 15-mill amendment was legally adopted, the Court considered the question "What is its proper construction in the particulars hereinafter noted?" Mr. Justice NORTH, writing for the Court, discussed and construed three exceptions to the general limitation that the total amount of taxes for all purposes shall not exceed 1½ per cent. of the assessed valuation in any one year. The first exception was discussed as follows (p. 348):

"At the outset, the framers of the proposed amendment, and later the people who considered its adoption, were confronted with the legal proposition that contractual obligations could not be impaired, and therefore the general exception to the proposed limitation of taxation was made by excepting 'taxes levied for the payment of interest and principal on obligations heretofore incurred.' We are not here concerned with this particular limitation, except to note that in drafting the amendment, as well as in its adoption, the people were mindful of existing conditions and sought to so frame the amendment as to be in accord with such existing conditions. This led to embodying in the amendment the above-quoted provision as the first exception to its general limitation on taxation."

Said opinion then refers to what is considered as the second exception, as follows (p. 348):

"Reading further in the amendment, it clearly appears it also occurred to those interested in its framing and adoption that certain conditions might already exist or might thereafter arise in consequence of which the electors of any assessing district

might conclude that the one and one-half per cent. constitutional limitation was unduly restrictive. * * * Hence the provision in the amendment that the specified limit might be increased for a period not exceeding five years at any one time to the maximum limit of five per cent. of the assessed valuation by a two-thirds vote of the electors of the assessing district. * * * And such provision constituted a second exception to the general taxation limitation contained in the amendment.''

Having thus eliminated the above two exceptions (which are not essential to a consideration of the precise question before us in the instant case), Mr. Justice North discussed a third exception, as follows (pp. 349–351):

''This brings us to what a fair reading of the amendment indicates is a third exception to the general limitation of taxation, which exception the framers and adopters of this amendment seemingly deemed essential, and which we think gave rise to including in the amendment the words '*or when provided for by the charter of a municipal corporation.*' At this point consideration was evidently given to the well-known fact that in comparatively recent years there had developed in this State the so-called 'home-rule' feature of our government. Provision therefor was embodied in the Constitution of 1908 (article 8, § § 20, 21). This was followed by the legislative enactment of the home-rule bill (Act No. 279, Pub. Acts 1909 [1 Comp. Laws 1929, § 2228 *et seq.*]). In the meantime many cities in Michigan have been chartered under the above-cited constitutional provision and legislative enactment. Under the constitutional provision, by the home-rule act, it was sought fundamentally to place in the hands of the electors of the cities chartered thereunder increased power of local governmental control. To this purpose the home-rule act permitted a charter provision authorizing taxation for local municipal needs to the extent of two per cent. of the assessed

valuation of taxable property (1 Comp. Laws 1929, § 2230 *).   *   *   *   Under constitutional provisions and within the specified limitations, this taxing power had already been delegated to various cities in Michigan; and, as noted above, this fact was well known. Surely it would be a strange governmental operation, wholly inconsistent with the ordinary methods of accomplishing that result (if not entirely without precedent) that the charters of the various cities of this State should be summarily amended by a constitutional provision which in spirit, if not in letter, was diametrically opposed to the recently developed policy of home-rule government in this State. This being true, we are fully convinced that the framers and adopters of this constitutional amendment found themselves confronted with a condition which prompted this third exception to the general limitation of the exercise of the taxing power in cities already constitutionally vested with the power to tax in excess of the proposed limitation. To meet this situation, the quoted phrase was embodied, and for that reason it should be held to mean that 'this limitation may be increased' in the cities whose charters already empower them to levy a tax for municipal purposes in excess of the amount which the city might levy under the terms of the 1932 amendment.   *   *   * At the expense of repetition, we state again that (disregarding the exception of taxes levied for payment of debts), we think the amendment must be construed as though it read:

"The total amount of taxes assessed against property for all purposes in any one year shall not exceed one and one-half per cent. of the assessed valuation of said property: *Provided,* That this limitation may be increased for a period of not to exceed five years at any one time to not more than a total of five per cent. of the assessed valuation, by a two-thirds vote of the electors of any assessing district, or (that this limitation may be increased) when pro-

* Stat. Ann. § 5.2073.—REPORTER.

vided for by the (present or future) charter of a municipal corporation.

"In the foregoing, reference has been made to the so-called home-rule cities, but we think the same result would follow as to cities having special charters with like provisions as to the exercise of the power of taxation. The result of the above construction is that the 1932 amendment neither increased nor decreased the charter power of a city to levy taxes for its municipal purposes."

In the above case, the charter of the city of Pontiac (a home-rule city) authorized the city to levy annually a tax on real and personal property not to exceed 2 per cent. of the assessed valuation, for the sole use of the city. The question presented was whether the 15-mill amendment limited the annual tax for all purposes on property in the city (except debt service) to 1½ per cent. of the assessed valuation; or did the city still have the power to tax up to 2 per cent. for municipal purposes. The city claimed it was not limited by the 15-mill amendment, but that the city charter limitation of 2 per cent. was still in full force and effect. The plaintiff school district contended that (except for debt service already incurred) the amendment limited taxation to 1½ per cent., notwithstanding the charter provisions. As to that, the opinion upheld the position taken by the city.

We have reviewed the above opinions at length, mainly because excerpts from said opinions form the basis for claims now made by both the plaintiff and the defendant, and counsel for *amici curiae* in the instant case, that each supports their present divergent positions. Furthermore, the above *School District of City of Pontiac* v. *City of Pontiac Case* gave impetus to a statement in syllabus 7 which reads as follows:

"Cities chartered as home-rule cities (Const. art. 8, §§ 20, 21; 1 Comp. Laws 1929, § 2228 *et seq.*), cities having special charters with tax limitation provision, and cities of fourth class and villages organized under Constitution, art. 8, § 21; 1 Comp. Laws 1929, § 1465 *et seq.*, having adopted their own tax limitation, are not subject to 15-mill property tax limitation provided for in amendment to Constitution (article 10, § 21), except that if any part of said 15 mills should be allocated to them by legislature, it must be included in total amount assessable for city or village purposes under charter limitation."

Subsequently Mr. Justice BUTZEL, writing for the Court in *Simonton* v. *City of Pontiac, supra,* said (p. 20):

"Neither does the 15-mill amendment, article 10, § 21, of the Constitution *include home-rule cities within its scope. School District of City of Pontiac* v. *City of Pontiac,* 262 Mich. 338."

Counsel for *amici curiae* now attempt by a literal interpretation of this statement to support their claim that the plaintiff city of Hazel Park in no way comes within the purview of the 15-mill *amendment.* The above statement in the *Simonton Case* thus is read too literally. While it applies to home-rule cities as therein stated, it is more proper to say that the 15-mill *limitation* in the amendment does not apply to cities which come within the exceptions noted therein. A more conservative statement was written by Mr. Justice NORTH, in *County of Macomb* v. *City of Mt. Clemens,* 271 Mich. 334, 335, as follows:

"The city of Mount Clemens is under the home-rule act, and therefore *its power of taxation* is not limited *by the 15-mill constitutional amendment,* being article 10, § 21, Constitution (1908)."

In *Simonton* v. *City of Pontiac, supra,* the plaintiff, representing bondholders, sought mandamus to compel the city of Pontiac to levy and collect sufficient taxes to pay the amounts due bondholders. The city had proposed a tax budget for 1934 which would practically eliminate the possibility of making any substantial payments on outstanding debt service. The defendant city claimed that constitutional provisions and legislative enactments limited "the rights of taxation for city purposes" to 2 per cent. for any one year. The city based its contention on sections 20 and 21, article 8, of the Michigan Constitution (1908), and sections 3 and 5 of the home-rule act (Act No. 279, Pub. Acts 1909 [1 Comp. Laws 1929, §§ 2230, 2241 * (Stat. Ann. §§ 5.2073, 5.2084)]). Under the constitutional provisions referred to, each city has the power to adopt or amend its charter, and to pass laws and ordinances relating to its municipal concerns, *"subject to the Constitution and general laws of this State."* The home-rule act referred to provides that no city shall have power to "increase the rate of taxation now fixed by law," except by affirmative vote of a majority of the electors, and that the increase in any case "shall not be such as to cause such rate to exceed two per centum of the assessed value of the real and personal property in such city." The Pontiac city charter provided that the tax for the purpose of defraying the general expenses and liabilities of the city should not exceed 2 per cent. of the assessed value of the property in said city in any one year. The plaintiff bondholders claimed that the question of levying and collecting taxes for city purposes and

---

* This section was amended by Act No. 239, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 2241).

It was also amended by Act No. 60, Pub. Acts 1941 (Comp. Laws Supp. 1945, § 2241, Stat. Ann. 1946 Cum. Supp. § 5.2084).—REPORTER.

payment of their bonds was controlled by Act No. 273, § 5, Pub. Acts 1925, as amended (1 Comp. Laws 1929, § 2694, as amended by Act No. 142, Pub. Acts 1931 [Comp. Laws Supp. 1935, § 2694, Stat. Ann. § 5.3175]) (since repealed by Act No. 202, Pub. Acts 1943). It provided as follows:

"Whenever any money shall be borrowed by any municipality it shall be the duty of every officer or official body charged with any duty in connection with the determination of the amount of taxes to be raised or with the levying of such taxes, to include in the amount of taxes levied each year an amount sufficient to pay the annual interest on all such loans, any instalments of the principal thereof falling due before the time of the following tax collection and all payments required to be made to sinking funds. In any municipality having any debt now outstanding and unpaid, a tax shall in like manner be levied each year, sufficient to pay the interest on such debt falling due before the time of the following tax collection, to pay any principal instalment of serial bonds falling due before the time of the following tax collection and to deposit into a sinking fund annually an amount which with the increment thereof will be sufficient to pay the principal of such debt at maturity or within the term of refunding bonds hereby authorized to be issued. * * * No limitation in any statute or charter shall prevent the levy and collection of the full amount of taxes required by this section for the payment of debts, but nothing herein shall authorize the levy of a tax for any other purpose exceeding the existing tax limitation."

Referring to the Michigan Constitution (1908), Mr. Justice BUTZEL, writing for the Court in the *Simonton Case,* said (pp. 18–21):

"The power to limit the rate of taxation and restrict debts was left to the legislature, where it

would be subject to such changes as might be necessary by changing conditions. 2 Debates, Constitutional Convention, p. 1432.

"Article 8, § 21, of the Constitution, hereinbefore quoted, expressly states that the charter that might be adopted by a city was subject to the Constitution and general laws of the State. The legislature in the exercise of this power thus reserved, adopted Act No. 273, Pub. Acts 1925 (1 Comp. Laws 1929, § 2694, as amended by Act No. 142, Pub. Acts 1931,*. hereinbefore quoted), which specifically stated that no limitation in any statute or charter shall prevent the levy and collection of the full amount of taxes required solely for the payment of debts, and made it necessary for the city to include in the amount of the taxes levied each year a sum sufficient to pay the annual interest and the instalments of principal on its obligations falling due before the time of the following tax collection. * * * In *Harsha* v. *City of Detroit*, 261 Mich. 586 (90 A. L. R. 853), we held that the legislature might modify the charters of municipal corporations at will and that the State still retained authority to amend charters and enlarge and diminish their powers. *City of Kalamazoo* v. *Titus*, 208 Mich. 252; *Clements* v. *McCabe*, 210 Mich. 207; *Attorney General, ex rel. Lennane*, v. *City of Detroit*, 225 Mich. 631. In *Doyle* v. *Election Commission of City of Detroit*, 261 Mich. 546, we again held that the general law passed by the 1931 session of the legislature did not infringe upon the right of municipal home rule and was not unconstitutional; that it being a general law; the home-rule charter of the city of Detroit was subject thereto and not infringed thereby. Neither does the 15-mill amendment, article 10, § 21, of the Constitution *include home-rule cities within its scope*. *School Dis-*

* This section was last amended by Act No. 2, Pub. Acts 1937 (Ex. Sess.) (Comp. Laws Supp. 1940, § 2694, Stat. Ann. 1942 Cum. Supp. § 5.3175), and repealed by Act No. 202, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 2689–101, Stat. Ann. 1946 Cum. Supp. § 5.3188[48]).

*trict of City of Pontiac* v. *City of Pontiac,* 262 Mich. 338. While the case of *Hammond* v. *Place,* 116 Mich. 628 (72 Am. St. Rep. 543), was decided before the present Constitution and the legislative acts hereinbefore referred to, nevertheless the general principles therein stated still apply. In that case, the plaintiffs obtained a writ of mandamus to compel the assessor to levy upon the tax roll the amount of plaintiffs' judgment, which represented the amount due on matured bonds. The defendant contended that such a levy would cause the tax rate to exceed the three per cent. provided in the charter of the city. It stressed the fact that owing to the change in conditions and the moving away of large industries, the city was in very great financial distress and unable to meet its obligations. The Court said:

" 'The contention means this: That the municipality may avoid its legal obligations by the reduction of its valuation, and making its running expenses equal to the limit of taxation. This is practical repudiation. Whether the valuation of the property of this city at $33,000 was reached by the same methods as were severely condemned by this Court, speaking through Justice COOLEY, in *Wattles* v. *City of Lapeer,* 40 Mich. 624, we do not know, since there is no explanation in the record. Whether, however, this singular result would follow from a strict construction of the limitation clause in its charter, we need not determine. Possibly in contemplation of such results, a special statute was enacted, providing for the assessment of judgments rendered against municipalities. 3 How. § 8218. This statute provides that judgments rendered against municipalities shall be assessed by the assessing officers upon its taxable property, and the amount thereof added to the other municipal taxes. It was enforced in *Shippy* v. *Mason,* 90 Mich. 45. It clearly provides for the payment of judgments, exclusive of the limitations to taxation established by municipal charters.' * * *

"As the city was bound to take care of its debt service for the year by the provisions of Act No. 273, Pub. Acts 1925, we need not discuss plaintiffs' further contention that chapter 10, § 4 (Pontiac charter), also imposed this duty upon the city."

The above (*Simonton*) opinion does not rest decision on the ground that the obligations were incurred prior to the effective date of the 15-mill amendment, and therefore would be within the first exception noted by Mr. Justice North, in *School District of City of Pontiac* v. *City of Pontiac, supra,* namely, that the 15-mill amendment does not apply to taxes levied for the payment of interest and principal on obligations "heretofore incurred," *i.e.* before December 8, 1932. It is possible that the decision in the *Simonton Case* might have been grounded on said exception. However, we feel that the principles there laid down without limiting decision therein to the first exception, apply equally to the situation now before us in the instant case. Apparently these decisions in the *Pontiac Cases* were planted on a construction of the third exception referred to by Mr. Justice North in the *School District of City of Pontiac* v. *City of Pontiac Case, i.e.,* "when provided for by the charter of a municipal corporation."

We do not overlook the fact that in the instant case, by an amendment to the charter of the plaintiff city, the maximum of taxes for city purposes in any one year was increased to 1.8 per cent. (instead of the constitutional limit of 1.5 per cent.) on the assessed valuation of the property in the city. But we also assume that under that limitation, if these bonds be issued and sold, the result will be that the city will not be able to pay the principal and interest thereon and in addition raise sufficient money by taxation to defray the necessary municipal expenses,

unless the annual tax rate should exceed 1.8 per cent. Under such circumstances the charter limit of 1.8 per cent. does not control, inasmuch as every municipal charter is subject to the Constitution and general laws of this State. The municipal finance act, *supra,* is a general law of the State, and applies here. It provides that no limitation in any statute or charter shall prevent the levy and collection of the full amount of taxes required to pay the bond issue which has been approved by the electors of Hazel Park and the municipal finance commission.

"The legislature shall provide by a general law for the incorporation of cities, and by a general law for the incorporation of villages; *such general laws* shall limit their rate of taxation for municipal purposes, and restrict their powers of borrowing money and contracting debts." Const. (1908), art. 8, § 20.

"Under such general laws, the electors of each city and village shall have power and authority to frame, adopt and amend its charter and to amend an existing charter of the city or village heretofore granted or passed by the legislature for the government of the city or village and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, *subject to the Constitution and general laws of this State.*" Const. (1908), art. 8, § 21.

"Municipal corporations are State agencies, and, subject to constitutional restrictions, the legislature may modify the corporate charters of municipal corporations at will. 12 C. J. p. 1031. Powers are granted to them as State agencies to carry on local government. The State still has authority to amend their charters and enlarge or diminish their powers. 1 Cooley, Constitutional Limitations (8th Ed.), p. 393. * * * The legislature may regulate the amount of municipal indebtedness and the rate of

taxation of cities. It is expressly authorized by article 8, § 20, of the Constitution so to do. Its powers are plenary. It may increase or decrease the limit of bonded indebtedness and the rate of taxation for municipal purposes, subject to the prohibition in the Constitution of this State and of the United States that such legislation shall not operate directly upon contracts so as to impair their obligation by abrogating or lessening the means of their enforcement. *Wolff* v. *New Orleans,* 103 U. S. 358 (26 L. Ed. 395). There is no constitutional provision against changing the limit of bonded indebtedness or limiting the rate of taxation for municipal purposes which in cities under the home-rule act obtained when plaintiff acquired her bond.   *   *   *

"The power vested by the Constitution of this State in the legislature to limit the rate of taxation of cities for municipal purposes and restrict their powers of borrowing money and contracting debts is complete in itself and unrestricted." *Harsha* v. *City of Detroit,* 261 Mich. 586, 591, 592, 594 (90 A. L. R. 853).

"Article 8, § 21, of the Constitution, hereinbefore quoted, expressly states that the charter that might be adopted by a city was subject to the Constitution and general laws of the State. The legislature in the exercise of this power thus reserved, adopted Act No. 273, Pub. Acts 1925 (1 Comp. Laws 1929, § 2694, as amended by Act No. 142, Pub. Acts 1931,* hereinbefore quoted), which specifically stated that no limitation in any statute or charter shall prevent the levy and collection of the full amount of taxes required solely for the payment of debts, and made it necessary for the city to include in the amount of the taxes levied each year a sum sufficient to pay the annual interest and the instalments of principal on its obligations falling due before the time of the fol-

---

* This section was last amended by Act No. 2, Pub. Acts 1937 (Ex. Sess.) (Comp. Laws Supp. 1940, § 2694, Stat. Ann. 1942 Cum. Supp. § 5.3175), and repealed by Act No. 202, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 2689–101, Stat. Ann. 1946 Cum. Supp. § 5,3188[48]).

lowing tax collection." *Simonton* v. *City of Pontiac,*
*supra,* p. 19.

"Had the charter provided the bonding limit
might be raised or lowered by any different vote
than that prescribed by the statute, it obviously
would have been of no force. Or had the charter
been silent as to the requisite majority, and this con-
troversy had arisen, a construction of the charter
would have required us to read into it the legislative
provision. This being true, when the legislature
amended the act by requiring a three-fifths vote in-
stead of a two-thirds vote, the amendment was
automatically read into the charter, and is now a
part of it." *City Commission of the City of Jack-
son* v. *Vedder,* 209 Mich. 291, 294.

"Defendants claim the charter was not amended
and, therefore, whether the special assessment bonds
should be included in the debt limitation or not is
governed by the charter provision. The statutory
provision of 1925 did not require any incorporation
in the charter for it was a general law and is to be
read into the charter.    *    *    *

"It is to be noted that the home-rule act* for
villages is one of general grant of rights and powers,
subject, however, to stated restrictions and there-
under the charter may carry any provisions deemed
proper for the municipal government not contrary
to the Constitution or any general statute. See
*City of Pontiac* v. *Ducharme,* 278 Mich. 474; *Toebe*
v. *City of Munising,* 282 Mich. 1. No election is re-
quired for special assessment bonds for general
village improvements of public moment and need.
Nor is an election necessary for an issue of bonds for
the village portion of local improvements, if within
the designated percentage, or in the refunding of
such bonds. Under the village home-rule act the
charter as adopted by the electors must conform to
the provisions of the Constitution and applicable
statutory laws of the State, but under modern legis-

---

* See 1 Comp. Laws 1929, § 1763 *et seq.* (Stat. Ann. § 5.1511 *et
seq.*)

lation the charter adopted is supplemented by specific statutory provisions to supply the needs for municipal operation.'' *Callahan* v. *City of Berkley,* 307 Mich. 701, 708–710.

''Because of a contention to the contrary in an *amicus curiae* brief, we also note that our opinion in the instant case neither overrules nor conflicts with *Utica State Savings Bank* v. *Village of Oak Park,* 279 Mich. 568, because the subject matter involved in the cited case was purely local (the purchase of a town hall site), but in the instant case the controversy instead of being of local concern only is one of State-wide concern since it pertains to debt limitations in all Michigan home-rule cities.'' *Gallahan* v. *City of Berkley,* (on application for rehearing), 307 Mich. 713.

''In *Dawley* v. *Ingham Circuit Judge,* 242 Mich. 247, we held that the legislature may pass a general act directly conferring upon legislative bodies of cities, having home-rule charters, powers in addition to those enumerated in the charter. The purpose of the above act was to provide a uniform method throughout the State for the summoning and impaneling of juries in municipal courts of record for the trial of condemnation cases. It follows that sections 23 and 52 of the above act repeal and amend the provisions of title 8, chap. 1, § 6, of the charter of the city of Detroit in so far as the provisions of section 6 relate to the summoning and impaneling of a jury.'' *In the Matter of Widening Michigan Avenue, Roosevelt to Livernois Avenues,* 281 Mich. 95, 100.

''Section 36 of the 'home-rule act' provides:

'' 'No provision of any city charter shall conflict with or contravene the provisions of any general law of the State.'

''The 'home-rule act' is one of the general laws of the State, and charters adopted pursuant to its provisions must square with it.'' *Crary* v. *Marquette Circuit Judge,* 197 Mich. 452, 454.

"If the statute controls then the charter provisions to the contrary effect are void and the decree must be affirmed.

"The Constitution of 1908, art. 8, § 21, permits adoption of home-rule charters by cities subject, however, to the Constitution and general laws of the Stat. The act of 1877,* as amended, is a general law of the State. The home-rule act of 1909 (1 Comp. Laws 1929, § 2228 *et seq.*), requires permissible charter provisions to conform with the Constitution and general laws of the State.

"It was evidently the purpose of the legislature in authorizing and regulating such libraries by general law to remove the same from politics and factional disturbance.

"The provisions of the statute could not be abrogated by the charter provisions and, therefore, the city commission acted without authority in the premises." *Bostedor* v. *City of Eaton Rapids*, 273 Mich. 426, 429.

"In support of its contention that the Jackson city counsel had the power to fix *ex parte* gas rates in Jackson, plaintiff to some extent relies upon the fact that in 1914 Jackson adopted a home-rule city charter, and that charter contained the following provisions:

"'Sec. 5. Subject to the limitations of the charter and of the general laws, the city commission shall have power: * * * To regulate the prices to be charged for gas, heat or electricity, by all persons owning or operating in the streets and public places of the city, wires, pipes and conduits.'

"Plaintiff's contention is not tenable. By the express terms of the charter the quoted provision is 'Subject to the limitations * * * of the general laws' of the State. As hereinbefore noted, in 1939 the legislature passed a general law (Act No. 3, Pub. Acts 1939) by which it is provided:

---

* The act here referred to is Act No. 164, Pub. Acts 1877 (2 Comp. Laws 1929, § 8059 *et seq.* [Stat. Ann. § 15.1661 *et seq.*]).—Reporter.

" 'Sec. 6. The Michigan public service commission is hereby vested with complete power and jurisdiction to regulate all public utilities in the State except any municipally-owned utility and except as otherwise restricted by law. It is hereby vested with power and jurisdiction to regulate all rates, fares, fees, charges,' et cetera.

"This provision in the general laws of the State, to which Jackson's home-rule charter was subject, supplanted any contravening charter provision. *City Commission of the City of Jackson* v. *Vedder*, 209 Mich. 291; *Harsha* v. *City of Detroit*, 261 Mich. 586 (90 A. L. R. 853); and *Simonton* v. *City of Pontiac*, 268 Mich. 11. In the latter case it is said:

" 'In *Harsha* v. *City of Detroit*, 261 Mich. 586 (90 A. L. R. 853), we held that the legislature might modify the charters of municipal corporations at will and that the State still retained authority to amend charters and enlarge and diminish their powers.'

"We quote the following from the syllabi in the *Harsha Case.*

" 'Rule that corporate charters in which no power of amendment or repeal is retained, when accepted, constitute contracts between State and corporation, applies to private corporations only.

" 'Municipal corporations are State agencies, and, subject to constitutional restrictions, legislature may modify corporate charters of municipal corporations at will.

" 'Powers are granted to municipal corporations as State agencies to carry on local government, and State has authority to amend their charters and enlarge or diminish their powers.' " *City of Jackson* v. *Consumers Power Co.*, 312 Mich. 437, 449, 450 (62 P. U. R. [N. S.] 48).

See, also, *Chemical Bank & Trust Co.* v. *County of Oakland*, 264 Mich. 673, where the Court said (pp. 686, 687):

"It is claimed the questions here involved cannot be litigated in this case (mandamus). There is no question raised but what the county of Oakland received and expended plaintiff's money; it issued its tax-anticipation notes therefor; it has had the use and benefit of the money; such money remains unpaid. It now says it should not repay it because it violated the law in receiving it. There is no dispute about the amount, the manner in which it was borrowed, the corporate records underlying the loan, the amount is liquidated and due and the tax should be spread to pay it. The writ will issue, with costs."

While not controlling, administrative construction of a doubtful provision in the law is considered and given weight by the courts.

"It is well settled that the construction placed upon statutory provisions by any particular department of government for a long period of time, although not binding upon the courts, should be given considerable weight." *Aller* v. *Detroit Police Department Trial Board,* 309 Mich. 382, 386.

See, also, *Board of Education of Union School District of City of Owosso* v. *Goodrich,* 208 Mich. 646, and *Thoman* v. *City of Lansing,* 315 Mich. 566.

The construction given the *Simonton Case, supra,* and to the municipal finance act as applied to the instant situation, supports our conclusion herein. The *Simonton Case* has been considered as controlling as to bonds issued by municipalities, and has been followed by the municipal finance commission. Under Act No. 273, Pub. Acts 1925, and its successor, Act No. 202, Pub. Acts 1943, the municipal finance commission is charged with the duty to determine whether proposed municipal bonds comply with the provisions of said act. The present ruling of the commission, which plaintiff seeks to avert in this proceeding, conforms to the provisions of the act

and the practices of the commission. We agree with the position taken by the commission in this case.

The provision in the municipal finance act, *supra,* that no limitation in any statute or charter shall prevent the levy and collection of the full amount of taxes to pay the bond. issue, must be read into plaintiff's charter, and controls the instant case notwithstanding the 1.8 per cent. tax limitation in the charter. If the city of Hazel Park, in accordance with the authorization by its electors, continues its present plan to issue and sell bonds amounting to $416,000 to finance the proposed public improvement as a general obligation of the city, it must expect to pay the obligation incurred thereby; and such payment does not depend on action taken, or to be taken, by the electors to amend the city charter.

We conclude that the 15-mill constitutional limitation does not apply here, but on the contrary the exceptions, as construed herein, control decision. The writ is denied, but without costs as a public question is involved.

CARR, C. J., and BUTZEL, BUSHNELL, SHARPE, REID, NORTH, and DETHMERS, JJ., concurred.