CITY COMMISSION OF THE CITY OF JACKSON *v.* VEDDER.

1. MUNICIPAL CORPORATIONS—BONDING LIMITS—LEGISLATIVE QUESTION—CONSTITUTIONAL LAW—STATUTES.

   Under the Constitution (Art. 8, §§ 20, 21) authorizing the legislature to provide by a general law for the incorporation of cities and to restrict their powers of borrowing, the question of the bonding limits of cities is a legislative one over which they have no control except as provided in the enabling act.

2. SAME—JACKSON CHARTER—AUTOMATICALLY CONTROLLED BY GENERAL ACT.

   Where the general law (Act No. 294, Pub. Acts 1909) under which the city of Jackson was incorporated was amended by Act No. 5, Pub. Acts 1913 (1 Comp. Laws 1915, § 3307), amending the requirement for changing the bonding limits of a city from a two-thirds vote of the electors voting thereon to a three-fifths vote, the charter of said city was

automatically changed thereby, and a three-fifths vote *held*, sufficient to authorize the raising of the bonding limit of said city from three per cent. of the assessed valuation to five per cent.

Certiorari to Jackson; Parkinson (James A.), J. Submitted January 27, 1920.   (Calendar No. 29,087.) Decided February 27, 1920.

Mandamus by the city commission of the city of Jackson to compel Clifton H. Vedder, city clerk, to countersign and to deliver to the city treasurer certain sewer bonds.   From an order granting the writ, defendant brings certiorari.   Affirmed.

*W. S. Cobb,* for appellant.

*Lyman B. Trumbull,* for appellee.

BIRD, J.   A writ of mandamus was asked of the trial court to compel defendant to countersign and deliver to the city treasurer certain sewer bonds, which, it is claimed, had been authorized by a vote of the people.   The trial court granted the writ and the proceedings are here on certiorari at the instance of defendant.   The proceedings show that when the city of Jackson adopted its present charter in 1914 its bonding limit was three per cent. of its real and personal property.   The new charter provided that:

"The bonded indebtedness in the city shall not at any time hereafter exceed three per cent. of the real and personal property therein, according to the assessed valuation thereof, unless such limit shall be raised or lowered by a two-thirds vote of the electors voting on the question at a regular or special election."

In November, 1919, an amendment to this section was proposed and voted upon to change the limit from three per cent. to five per cent.   This proposition carried by a three-fifths majority vote, but fell short of

a two-thirds majority vote. The failure to secure a majority of two-thirds of those voting thereon is the defendant's reason for refusing to countersign and deliver the bonds.

The question, therefore, presented is whether the proposed amendment to increase the bonding limit from three per cent. to five per cent. received the necessary majority to make it operative.

The Constitution of 1908 provides that:

"The legislature shall provide by a general law for the incorporation of cities, and by a general law for the incorporation of villages; such general laws shall limit their rate of taxation for municipal purposes, and restrict their powers of borrowing money and contracting debts.

"Under such general laws, the electors of each city and village shall have power and authority to frame, adopt and amend its charter, and, through its regularly constituted authority to pass all laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of this State." Article 8, §§ 20, 21.

In obedience to this mandate, the legislature at its session in 1909 enacted laws for the incorporation of cities and villages, and in the city act provided that:

"Each city may, in its charter, provide: * * * For borrowing money on the credit of the city, in a sum not to exceed eight per cent. of the assessed value of all real and personal property in the city: *Provided,* That in cities where the amount of money which may be borrowed is now limited by law, such limit shall continue until it shall be raised or lowered by a two-thirds vote of the electors voting on the question at a general or special election." * * * Act No. 279, Pub. Acts 1909, § 4.

Act No. 5 of the Public Acts of 1913 (1 Comp. Laws 1915, §§ 3307) amended this section so as to read "by a three-fifths vote" instead of a two-thirds vote.

Under these constitutional and legislative provi-

sions the cities have the right to determine what the bonding limit shall be up to eight per cent. of the valuation of their real and personal property, but they have no right to prescribe the mode or manner of raising or lowering the bonding limit. That question is a legislative one over which the cities have no control. The legislative act which followed these constitutional provisions does not delegate to the cities the right to prescribe the mode and manner of raising or lowering the bonding limit. It is true, the Jackson charter contained the provision requiring a two-thirds vote, but this was not inserted therein by the framers of the charter, by reason of any judgment or discretion which they exercised, but it was inserted therein because it was a legislative requirement. Had the charter provided the bonding limit might be raised or lowered by any different vote than that prescribed by the statute, it obviously would have been of no force. Or had the charter been silent as to the requisite majority, and this controversy had arisen, a construction of the charter would have required us to read into it the legislative provision. This being true, when the legislature amended the act by requiring a three-fifths vote instead of a two-thirds vote, the amendment was automatically read into the charter, and is now a part of it.

It appearing by the record that the proposed amendment raising the bonding limit to five per cent. carried by a three-fifths vote, it must be declared valid and in operation. The trial court made the proper order and it will be affirmed. We will follow our rule to allow no costs in proceedings affecting the public interest.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, CLARK, and SHARPE, JJ., concurred.