LUCAS v WAYNE COUNTY BOARD OF COUNTY ROAD
COMMISSIONERS

Docket Nos. 71018, 71499. Submitted July 26, 1983, at Detroit.—
Decided January 31, 1984. Leave to appeal denied, 418 Mich
945.

Plaintiff, William Lucas, is the Chief Executive Officer (CEO) of
Wayne County. Wayne County has a charter form of govern-
ment and a population exceeding 1,500,000 people. On Decem-
ber 21, 1982, plaintiff filed a complaint in the Wayne Circuit
Court seeking injunctive relief and alleging that defendant
Board of County Road Commissioners of Wayne County and the
individual defendants, Claude Dukes, Grace Hampton, and
Harold Bondy, the individual members of the board, were in
breach of their fiduciary duty by negotiating labor contracts
with the Wayne County Government Bar Association
(WCGBA), the collective-bargaining representative for seven
attorneys employed by the defendant board. The WCGBA's
motion to intervene as a defendant was granted by the circuit
court. On December 30, 1982, the trial court entered a tempo-
rary restraining order which enjoined plaintiff from discharg-
ing the individual defendants or making new appointments to
their positions. On January 13, 1983, plaintiff filed an amended
complaint claiming that as the CEO he has the authority to
summarily remove the individual defendants from their offices
as road commissioners and appoint their successors to serve at
his pleasure. On January 14, 1983, plaintiff moved for sum-

REFERENCES FOR POINTS IN HEADNOTES

[1-4, 6, 7] 16A Am Jur 2d, Constitutional Law § 765.
    56 Am Jur 2d, Municipal Corporations, Counties, and Other Politi-
    cal Subdivisions §§ 105-107.
[4, 6, 7, 13] 39 Am Jur 2d, Highways, Streets, and Bridges § 13.
    56 Am Jur 2d, Municipal Corporations, Counties, and Political
    Subdivisions §§ 235, 237, 333, 337-339.
[5, 12] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
    Political Subdivisions §§ 127, 195.
[8] 73 Am Jur 2d, Statutes §§ 415, 416.
[9] [No Reference]
[10] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
    Political Subdivisions § 51.
[11] 73 Am Jur 2d, Statutes § 140.

mary judgment. The board and the individual defendants moved for a summary judgment on January 25, 1983, claiming that the plaintiff lacked such authority. On April 26, 1983, the trial court, Irwin H. Burdick, J., issued an opinion and entered an order denying the defendants' motion for summary judgment and granting plaintiff's motion for summary judgment. The court concluded that the county charter act gave plaintiff the authority he claimed. The court also dissolved the temporary restraining order dated December 30, 1982. On April 27, 1983, plaintiff terminated the individual defendants from their offices and appointed their successors. On April 29, 1983, the circuit court ordered a stay of its April 26, 1983, order of summary judgment. The plaintiff and the defendants brought separate appeals. The two appeals were consolidated by the Court of Appeals. On May 17, 1983, the Court of Appeals issued a stay order. On May 19, 1983, the Court of Appeals clarified the May 17 order by limiting the stay to that portion of the circuit court's April 26 order "which dissolves the temporary restraining order, dated December 30, 1982, which enjoined plaintiff from discharging the defendant members of the board or making new appointments to their positions". The order of stay issued by the Court of Appeals precluded the discharge of the incumbent road commissioners serving on April 26, 1983, and appointment of their successors pending decision by the Court of Appeals. On July 22, 1983, motions to intervene as defendants by Michigan AFSCME Council 25 and the County Road Association of Michigan were granted by the Court of Appeals. Five issues were raised on appeal. *Held:*

1. The implementing legislation for counties having a population of over 1,500,000, 1980 PA 7, does not violate the constitutional prohibition regarding local acts, Const 1963, art 4, § 29. There is a reasonable relationship between the population of the county and the need for differentiation of political structure because densely populated counties such as Wayne County present problems of governmental management and control different in kind, quality, and magnitude from those faced by other counties. The population criterion specified in 1980 PA 7 bears a reasonable relationship to the purpose of the enactment, namely, the organization of county government.

2. It is impossible to agree with defendants' argument that plaintiff's power to appoint and remove road commissioners was "otherwise specifically" precluded pursuant to § 6 of the county road law when the charter was adopted, where that section provided for the appointment and removal of road commissioners by the county board of commissioners. MCL

224.6. Also in existence when the charter was adopted was 1980 PA 7, § 14(d)(ii) of which specifically provided that in counties of more than 1,500,000 there should be a three-member road commission whose members shall be appointed and may be removed by the elected county executive or chief administrative officer. Since 1980 PA 7 specifically applies to Wayne County's charter form of government, plaintiff's power to appoint and remove was not "otherwise specifically" precluded by MCL 224.6.

3. The Department of Road Commission mentioned in § 4.361 of the county charter falls within the language of § 4.384 of the charter that "directors, deputy directors, members of boards and commissions * * * shall be appointed by the CEO" and "serve at the pleasure of the appointing authority".

4. Statutory provisions not mentioned per se in a municipal charter are automatically read into the charter and become a part thereof. Therefore, it is irrelevant that the Wayne County charter does not mirror word-for-word the language of the enabling acts. The statutory provisions, by virtue of their enactment into general law, form a part of the charter whether or not repeated therein, fill in the gaps, and supersede any possibly conflicting provision actually contained within the charter.

5. Since 1982 PA 299 and 1982 PA 300 were passed simultaneously, were each dependent upon the enactment of the other, and dealt with the same subject, the Court of Appeals does not agree with defendants' contention that the omission in Act 299 of a provision for appointment and removal of road commissioners by the CEO evidenced a legislative intent to deny that power unless the charter was again voted upon. The Legislature did not intend to undo in Act 299 what it was reaffirming in Act 300, *viz.:* mandating that in a county with more than 1,500,000 population the road commissioners be appointed and removed by the CEO.

6. 1982 PA 300 is more specific than 1982 PA 299 and therefore must control.

7. The Court of Appeals does not agree with the defendants' contention that the Governor's approval of the county charter without the Attorney General's express recommendation of approval rendered the charter nugatory. The Legislature merely provided for the Attorney General to act in an advisory capacity in regard to his recommendation.

8. Amendment of a statute by implication is permitted without republishing or re-enacting every previous statute affected by the new law. 1980 PA 7 does not purport to insert words

from one statute to another, is a complete act in itself, does not confuse or mislead, but publishes in one act for all the world to see what it purports to do. The act is not a part of the mischief designed to be remedied by Const 1963, art 4, § 25 or *Alan v Wayne County*, 388 Mich 210 (1972).

9. The order of stay issued by the trial court on April 29, 1983, and the stays ordered by the Court of Appeals on May 17 and 19, 1983, are vacated.

10. This opinion shall be given immediate effect.

Affirmed.

1. CONSTITUTIONAL LAW — LOCAL ACTS.

The fact that a legislative act contains a population classification which limits the geographical application of the act does not necessarily make the act local or special; if the population classification has a reasonable relation to the purpose of the statute and the statute applies whenever the population classification is met, an act containing such a classification is not thereby made local or special (Const 1963, art 4, § 29).

2. CONSTITUTIONAL LAW — LOCAL ACTS — COUNTIES — POPULATION.

A statute which distinguishes counties on the basis of population is not invalid as a local act where there is an obvious and intimate relationship between the population of a county and its governmental organization; once the validity of a population factor is recognized, the Legislature's choice as to where to draw the line must be upheld unless patently arbitrary (Const 1963, art 4, § 29).

3. COUNTIES — LOCAL ACTS — CONSTITUTIONAL LAW — PUBLIC ACTS.

The implementing legislation for counties having a population of over 1,500,000 is not unconstitutional as local legislation; the population criterion therein specified bears a reasonable relationship to the purpose of the enactment, namely, the organization of county government (Const 1963, art 4, § 29; 1980 PA 7).

4. COUNTIES — ROAD COMMISSIONS — PUBLIC ACTS.

The implementing legislation for counties having a population of over 1,500,000 provides that in counties of more than 1,500,000 there should be a three-member road commission whose members shall be appointed and may be removed by the elected county executive or chief administrative officer (1980 PA 7).

5. MUNICIPAL CORPORATIONS — STATUTES — MUNICIPAL CHARTERS.

Statutory provisions not mentioned per se in a municipal charter are automatically read into the charter and become a part

thereof; the statutory provisions, by virtue of their enactment into general law, form a part of the charter whether or not repeated therein, fill in the gaps, and supersede any possibly conflicting provision actually contained within the charter.

6. COUNTIES — COUNTY ROAD COMMISSIONERS — CHIEF EXECUTIVE OFFICER.

The 1982 act which amends the county charter law specifically provides that the charter of a county having a population of more than 1,500,000 persons must give the chief executive officer the power to appoint and remove road commissioners (1982 PA 300).

7. STATUTES — JUDICIAL CONSTRUCTION — COUNTIES.

The 1982 act which amends the county charter law is more specific than the 1982 act which amends the county road law with respect to the power of the chief executive officer in a county having a population of more than 1,500,000 to appoint and remove road commissioners (1982 PA 299; 1982 PA 300).

8. STATUTES — JUDICIAL CONSTRUCTION.

Rules of statutory construction dictate that a special statute enacted subsequent to or simultaneously with a general statute is an exception to the general regulation.

9. WORDS AND PHRASES — RECOMMENDATION.

The word "recommendation" refers to action which is advisory in nature rather than action having a binding effect.

10. COUNTIES — CHARTER — GOVERNOR — ATTORNEY GENERAL.

The statutory provision regarding the submission of a county charter to the Governor for his approval provides for the Attorney General to act in an advisory capacity in submitting a written recommendation to the Governor regarding such approval (MCL 45.516; MSA 5.302[16]).

11. STATUTES — AMENDMENTS — CONSTITUTIONAL LAW.

Amendment of a statute by implication is permitted without republishing or re-enacting every previous statute affected by the new law where the amending act is a complete act in itself, does not confuse or mislead and does not purport to insert words from one statute to another (Const 1963, art 4, § 25).

12. STATUTES — COUNTIES — CHARTER COUNTIES — CONSTITUTIONAL LAW.

The 1980 act providing for the establishment of charter counties does not violate the constitutional provision regarding the

revision and amendment of laws (Const 1963, art 4, § 25; 1980 PA 7).

13. Counties — Chief Executive Officer — County Road Commissioners.

The section of the Wayne County Charter dealing with appointments clearly confers upon the chief executive officer the power to appoint and remove county road commissioners (1980 PA 7; 1982 PA 300; Wayne County Charter, art 4, § 4.385).

*John D. O'Hair,* Corporation Counsel, and *Miller, Canfield, Paddock & Stone* (by *David Olmstead, Larry J. Saylor,* and *Cynthia B. Faulhaber*), for plaintiff.

*Bodman, Longley & Dahling* (by *Joseph A. Sullivan, James J. Walsh,* and *Charles N. Raimi*), for defendants.

*T. John Lesinski,* for Wayne County Government Bar Association.

*Downs, Zagaroli & Downs, P.C.* (by *Tom Downs*), for County Road Association of Michigan.

Before: D. E. Holbrook, Jr., P.J., and Allen and R. R. Lamb,* JJ.

Per Curiam. May the elected Chief Executive Officer (CEO) of a charter county having a population exceeding 1,500,000 which has adopted a charter form of government pursuant to the enabling act for charter counties, MCL 45.501 *et seq.;* MSA 5.302(1) *et seq.,* remove incumbent road commissioners and make appointments to fill the vacancies thereby created? On April 26, 1983, the Circuit Court for Wayne County answered this question of first impression in the affirmative and granted summary judgment for plaintiff. On April

---

* Circuit judge, sitting on the Court of Appeals by assignment.

27, 1983, plaintiff terminated the individual defendants and appointed their successors. On April 29, 1983, the circuit court ordered a stay of its April 26, 1983, order of summary judgment.

In Docket No. 71499 plaintiff appeals as of right from the order of stay, and in Docket No. 71018 defendants appeal from the order of summary judgment. The two appeals were consolidated by order of this Court and argued before the Court July 25, 1983.

The basic facts are straightforward and uncontested. Plaintiff is William Lucas, elected County Executive (CEO) of Wayne County. Defendant Board of County Road Commissioners of Wayne County is the statutory corporate body created pursuant to the county road act, MCL 224.1 *et seq.;* MSA 9.101 *et seq.,* responsible for the county road system and highways in Wayne County, Detroit Metropolitan and Willow Run Airports and county parks. Defendants Claude Dukes, Grace Hampton, and Harold Bondy (individual defendants) are the incumbent members of the board, having been appointed to those positions by the Wayne County Board of Commissioners pursuant to § 6 of the county road law, MCL 224.6; MSA 9.106. Intervening defendant Wayne County Government Bar Association (WCGBA) is the collective-bargaining representative for seven attorneys employed by defendant board.

Pursuant to Const 1963, art 7, § 2, and the enabling legislation enacted in accordance therewith known as the county charter act, MCL 45.501 *et seq.;* MSA 5.302(1) *et seq.,* a home-rule charter was adopted June 16, 1981, by the Wayne County Charter Commission, and approved by the voters of Wayne County on November 3, 1981. In November, 1982, William Lucas was elected Chief Execu-

tive Officer. On December 21, 1982, plaintiff filed a complaint in circuit court seeking injunctive relief and alleging that defendant board and the individual defendants were in breach of their fiduciary duty by negotiating labor contracts with the WCGBA. On January 13, 1983, plaintiff filed an amended complaint asserting for the first time the pivotal claim in this litigation—that plaintiff as CEO has the authority to summarily remove the individual defendants from their office as road commissioners and appoint their successors to serve at his pleasure. On the following day, plaintiff moved for summary judgment.

On January 25, 1983, defendant board and the individual defendants filed their motion for summary judgment under GCR 1963, 117.2(1). The basis for that motion was defendants' assertion that plaintiff lacked authority to remove incumbent road commissioners and appoint their successors. The parties filed answers to each other's motion for summary judgment and submitted briefs in support of their respective positions. The matter was transferred to Judge Irwin H. Burdick who, after extensive oral argument on April 14, 1983, announced from the bench that he would issue a decision by April 26, 1983. On April 26, Judge Burdick issued a lengthy written opinion in which he concluded that § 14(d)(ii) of the county charter act, MCL 45.514(d)(ii); MSA 5.302(14)(d)(ii),** gave plaintiff the authority he claimed to remove incumbent road commissioners and appoint their successors. Judge Burdick also entered an order which denied defendants' motion for summary judgment and granted plaintiff's motion for summary judgment.

** References in this opinion to this statutory section reflect its proper citation prior to its amendment by 1982 PA 300.—REPORTER.

In separate actions, each party appealed as of right from Judge Burdick's orders. As noted earlier, the two appeals were consolidated and on July 22, 1983, motions to intervene as defendants by Michigan AFSCME Council 25 and County Road Association of Michigan were granted by this Court. In Docket No. 71018, the principal defendants raise four issues for review. A fifth and new issue is raised by intervening defendant County Road Association of Michigan. The sole issue presented in Docket No. 71499 concerns the status of the order of stay as granted by the trial court and as subsequently modified by order of this Court.

I

*Does the implementing legislation for counties having a population of over 1,500,000, 1980 PA 7, MCL 45.514[d][ii]; MSA 5.302[14][d][ii], violate the Michigan Constitution of 1963, art 4, § 29, the prohibition of local acts?*

In 1966, pursuant to the authority conferred upon Michigan counties in Const 1963, art 7, § 2, to adopt a charter form of government, the Legislature passed 1966 PA 293. MCL 45.501 *et seq.;* MSA 5.302(1) *et seq.* That act gave all counties the power to adopt, amend, or repeal a charter form of government. The only distinction among counties *on the basis of population* was the number of charter commissioners and county commissioners. The smaller the county population, the fewer the number of commissioners allowed. Since the top population figure stated in the act was 600,000, none of the population figures applied only to one county. However, in 1980, the Legislature in response to special problems existing in Wayne County passed 1980 PA 7. That act gave special

statutory authority for county charters applicable only to a county with a population over 1,500,000. Based on the 1980 federal census, the special authority so conferred applied only to Wayne County.

Section 14(d) of 1966 PA 293, applicable to all counties, contained a provision saying "[n]othing in the charter shall be in derogation of the powers and duties of county road commissioners in the exercise of their statutory duties concerning the preservation of a county road system". However, upon passage of 1980 PA 7, former § 14(d) was broken into parts (i) and (ii). Part (i) reads in part: "In a county having a population of less than 1,500,000, the charter shall not be in derogation of the powers and duties of the county road commission in the exercise of their statutory duties concerning the preservation of a county road system". Part (ii) commences with the language "[i]n a county having a population of 1,500,000 or more" and then goes on to authorize a three-member road commission which "shall be appointed by either the elected county executive or the chief administrative officer". It is under § 14(d)(ii) that plaintiff finds the authority to appoint road commissioners of his own choice.

Because § 14(d)(ii) of 1980 PA 7 applies only to one county, defendants argue that it is a special act which is prohibited by Const 1963, art 4, § 29, unless approved by two-thirds of the members of both houses of the Legislature and approved by a majority of the voters of the district affected. Because these procedures were not followed, defendants claim the charter provision under which plaintiff acted was invalid. In support of this claim, defendants strongly rely upon *Avis Rent-A-Car System, Inc v Romulus,* 400 Mich 337; 254

NW2d 555 (1977), and *Attorney General ex rel Dingeman v Lacy,* 180 Mich 329; 146 NW 871 (1914).

The fact that a legislative act contains a population classification which limits the geographical application of the act does not necessarily make the act local or special. If the population classification has a reasonable relation to the purpose of the statute and the statute applies whenever the population classification is met, an act containing such a classification is not thereby made local or special. *Dearborn v Wayne County Bd of Supervisors,* 275 Mich 151; 266 NW 304 (1936); *Chamski v Wayne County Bd of Auditors,* 288 Mich 238; 284 NW 711 (1939); *The Irishman's Lot, Inc v Secretary of State,* 338 Mich 662; 62 NW2d 668 (1954).

The statute in question concerns the organization of county government, sometimes referred to as "the dark continent" of American government. The least student of urban sociology knows that metropolitan population centers have far greater problems than rural areas with respect to crime and thus the law enforcement services necessary to preserve the public peace, with respect to indigency, and its associated problems of housing, sanitation, and medical treatment, as well as in respect to many other facets of life, such as emergency preparedness, toxic wastes, traffic flow (hence the specific focus on removing the independence of the road commission vis-à-vis the county chief executive), and many others.

Where there is an obvious and intimate relationship between the population of a county and its governmental organization, a statute which distinguishes counties on the basis of population is not invalid as a local act. As this Court said in *Airport Community Schools v State Bd of Ed,* 17 Mich App 574, 576; 170 NW2d 193 (1969):

"As amended, [1967 PA 239] applies to all counties attaining a population of more than 1,000,000.

"The large number of high school students to be found in non-high school districts in a populous area as opposed to the smaller number in a less populous area and the improbability of relief through annexation or consolidation establish the reasonable relation of the population classification to the purpose of the statute."

Similarly, in upholding a housing law which required the establishment of a board of tenant affairs in cities having a population over 1,000,000, the Court in *Bankhead v Mayor of River Rouge,* 387 Mich 610, 616; 198 NW2d 414 (1972), held:

"The population limitation restricts the application of [1968 PA 344] § 49 to the City of Detroit. The questions of whether the population limitation constitutes a local act or is a denial of equal protection as an unreasonable classification are discussed in the majority opinion of the Court of Appeals. We agree with the reasoning of that opinion."

This Court had said in *Bankhead,* 35 Mich App 7, 17; 192 NW2d 289 (1971):

"We are unable to say that restriction of the act as expressed in the title of the legislation is arbitrary. The Legislature could reasonably determine that tenants of public housing projects in large cities face considerably different problems than do tenants in smaller cities, such as to warrant classification. For example, tenants in large city public housing projects must compete with a greater number of tenants for individual attention. Tenants of such projects—because they live in the midst of huge urban areas—must cope with not only living in public housing but also living in large cities. Many such distinguishing features exist."

Because densely populated counties such as Wayne County present problems of governmental

management and control different in kind, quality, and magnitude from those faced by other counties, 1980 PA 7 is not unconstitutional as local legislation. The population criterion therein specified bears a reasonable relationship to the purpose of the enactment, namely, the organization of county government. Once the validity of a population factor is recognized, the Legislature's choice as to where to draw the line, unless patently arbitrary, must be upheld, as in *Bankhead.*

Defendants' strong reliance on *Avis Rent-A-Car System, supra,* is misplaced. The statute under attack in *Avis* withdrew from airport concessionaires in counties over 1,000,000 population a tax exemption given airport concessionaires in other counties. The court struck down the statute on grounds that the population of the county had no reasonable relationship to attracting an airport concession.[1] However, in the case before us, there is a reasonable relationship between the population of the county and the need for differentiation of political structure.

## II

*Does the adopted charter fail to give the CEO authority to appoint and remove road commissioners?*

Section 4.385 of the home-rule charter is entitled "Appointments" and reads:

---

[1] "The legislative purpose in 1970 PA 174 was to withdraw a tax exemption from concessions at airports located in counties over 1,000,000 people (only Wayne County). The legislative conclusion must have been that these airports will attract concessions without the lure of a tax exemption. *The attraction, however, is not a function of county population.* It depends on the volume of traffic flowing through the airport." 400 Mich 347. (Emphasis added.)

"*Unless otherwise specifically provided by* this Charter or *law:*

"(1) The Deputy CEO, directors, deputy directors, members of boards and commissions, representatives of the County on intergovernmental bodies, and all other officials or representatives not in the classified service shall be appointed by the CEO with the approval of a majority of Commissioners serving.

"(2) If the Commission fails to act on a *[sic]* appointment within 30 days after its submission to the Commission, the appointment is effective.

"(3) Appointees in County government serve at the pleasure of the appointing authority." (Emphasis added.)

Plaintiff argues that this section plainly and unambiguously gives him power to remove the individual defendants from their offices as incumbent road commissioners and appoint their successors. Defendants contend that the charter does not confer such authority (a) because the limiting language (emphasized above), "otherwise specifically provided by * * * law", precludes such authority, and (b) because the charter provisions do not mirror the exact language of the enabling act, 1980 PA 7, heretofore referred to. We address the arguments separately.

On the date that the charter was adopted, November, 1981, there was a specific statute in existence pertaining to the selection of county road commissioners. That statute was the county road law, § 6 of which provided for the appointment and removal of road commissioners *by the county board of commissioners.* MCL 224.6; MSA 9.106. Further, that section was re-enacted in 1982 PA 299. Ergo, argue defendants, there was something "otherwise specifically provided by law" when the charter was adopted and, thus, plaintiff is without the authority he claims with respect to the road

commission. We disagree. Also in existence at the time the charter was adopted was 1980 PA 7, § 14(d)(ii) of which specifically provided that in counties of more than 1,500,000 there should be a three-member road commission whose members shall be appointed and may be removed by the elected county executive or chief administrative officer. In view of this statute which specifically applies to Wayne County's charter form of government, it is impossible to agree with defendants' argument that plaintiff's power to appoint and remove was "otherwise specifically" precluded.

We now turn to defendants' argument that because the charter provisions do not specifically pick up the language of the enabling act the CEO is without power to appoint and remove incumbent road commissioners. According to defendants, the charter must specifically address the removal and appointment of road commissioners as such; to address the removal and appointment of commissioners in general is not enough. On this issue the trial court persuasively stated:

"Defendants' argument erroneously presupposes that the key word in the statute relied upon, 'provided', connotes that the charter must mirror word for word the terms of the enabling act. Had the Legislature meant this they could have more clearly expressed their intention by using the phrase 'the charter shall state' or some other phrase indicating that the charter was to state word for word the content of the enabling act."

We agree with the trial judge. Carried to its logical extension, defendants' position would give every department not specifically named as subject to the CEO's removal powers the opportunity to claim exemption or immunity from such powers.

We do not think that was intended by the charter or the implementing legislation. For example, §§ 4.311 (corporation counsel), 4.321 (personnel), 4.341 (health), 4.351 (public works), and 4.381 (other agencies) call for the creation of named departments to be headed by certain parties but without any mention of appointment and removal. Yet all of them, in our opinion, clearly fall within the language that "directors, deputy directors, members of boards and commissions * * * shall be appointed by the CEO" and "serve at the pleasure of the appointing authority" in § 4.385 of the charter. The department of road commission mentioned in § 4.361 should be treated no less.

Furthermore, there is ample authority for the proposition that statutory provisions not mentioned per se in a municipal charter are automatically read into the charter and become a part thereof. In *City Comm of City of Jackson v Vedder,* 209 Mich 291; 176 NW 557 (1920), the city charter, in accordance with the then enabling state statute, provided that the limit of bonded indebtedness of the city could not be raised or lowered without a two-thirds vote. Some years later the Legislature amended the statute so as to allow the limit of indebtedness to be changed by a three-fifths vote. In a subsequent election on the question of raising the debt limit, the proposition carried by a three-fifths majority vote, but fell short of a two-thirds majority vote. Opponents of the increase filed suit claiming the increase was invalid because the charter did not contain the language in the statute. The Supreme Court disagreed, saying:

"Had the charter provided the bonding limit might be raised or lowered by any different vote than that prescribed by the statute, it obviously would have been of

no force. Or had the charter been silent as to the requisite majority, and this controversy had arisen, a construction of the charter would have required us to read into it the legislative provision. This being true, when the Legislature amended the act by requiring a three-fifths vote instead of a two-thirds vote, *the amendment was automatically read into the charter, and is now a part of it."* 209 Mich 294. (Emphasis added.)

This rule that statutory provisions not mentioned in a charter are read into and become a part of the charter has been followed in *City of Jackson v Consumers Power Co,* 312 Mich 437, 450; 20 NW2d 265 (1945); *City of Hazel Park v Municipal Finance Comm,* 317 Mich 582, 601; 27 NW2d 106 (1947), and *Council of City of Saginaw v Saginaw Policemen & Firemen Retirement System Trustee,* 321 Mich 641, 647-648; 32 NW2d 899 (1948), in which latter case the point had been deemed so well settled it was reaffirmed in these cryptic words:

"It must be assumed that the people, in adopting a constitutional amendment providing for a 15-mill tax limitation which might be increased by charter provision, were conversant with and had in mind the fact that it then was, as it now is, the established law in Michigan that charter provisions of municipal corporations come into being by legislative enactment as well as adoption by local electors. Hence, our decision in *City of Hazel Park v Municipal Finance Comm, supra,* which is controlling here."

Therefore, it is irrelevant that the Wayne County charter does not mirror word-for-word the language of the enabling acts. The statutory provisions, by virtue of their enactment into general law, form a part of that charter whether or not repeated therein, fill in the gaps, and supersede

any possibly conflicting provision actually contained within the charter.

## III

*Assuming that the CEO would otherwise have appointment and removal powers with respect to road commissioners, are those powers vitiated by 1982 PA 299?*

Defendants next argue that enactment of 1982 PA 299 evidenced a legislative intent to continue the long-standing procedure under the county road law for appointment of road commissioners by the county board of commissioners and for their removal only for cause after a due process hearing. In support of this position, defendants track the legislative history of House Bill 5874, showing that as introduced HB 5874 excluded charter counties. That draft was not enacted into law; the next draft proposed abolishing the board of road commissioners in charter counties, but that draft was also rejected. As finally adopted, the relevant section (subsection [2] of § 6) reads:

"(2) In a county having a population of 1,500,000 or more which has adopted a charter under Act No. 293 of the Public Acts of 1966, being sections 45.501 to 45.521 of the Michigan Compiled Laws, the powers and duties which are otherwise provided by law for a board of county road commissioners *may be reorganized by amendment to the charter.* Funds provided to the county pursuant to Act No. 51 of the Public Acts of 1951, being sections 247.651 to 247.674 of the Michigan Compiled Laws, shall only be expended for the purposes provided for in Act No. 51 of the Public Acts of 1951." (Emphasis added.)

Based upon this legislative history, defendants conclude that, had the Legislature intended to

exclude Wayne County from the long-standing procedure for selection of road commissioners, the earlier versions of HB 5874 would have been passed and that by revising subsection (2) to the form in which it finally did pass, "the Legislature announced that the appointment and removal provisions in subsection (1) of section 6 do apply in Wayne County *unless and until the county's charter is amended to reorganize the road commission's powers and duties".* (Emphasis added.) Since the Wayne County charter has not been so amended, defendants opine that the CEO is without power to remove and appoint road commissioners.

Defendants' argument would be persuasive but for the offsetting legislative intent expressed in 1982 PA 300 which became effective simultaneously with 1982 PA 299. In fact, Act 299 was tied to Act 300 with the express proviso: "This amendatory act shall not take effect unless House Bill No. 5875 of the 81st Legislature is enacted into law".[2] Act 299 amends the county road law and Act 300 amends the county charter law. Act 300 specifically provides that the charter of a county having a population of more than 1,500,000 persons *must* give the CEO the power to appoint and remove road commissioners.

Because Act 299 and Act 300 were passed simultaneously, were each dependent upon the enactment of the other, and dealt with the same subject, we cannot agree with defendants that the omission in Act 299 of a provision for appointment and removal of road commissioners by the CEO evidenced a legislative intent to deny that power unless the Wayne County charter was again voted

---

[2] House Bill 5875 became 1982 PA 300, and House Bill 5874 became 1982 PA 299.

upon. The Legislature could not have intended to undo in Act 299 what it simultaneously was reaffirming in Act 300, *viz.:* mandating that in a county with more than 1,500,000 population the road commissioners be appointed and removed by the CEO. We agree with plaintiff that to require a vote to amend the charter to empower the CEO to appoint and remove road commissioners would be an absurdity. It would require an amendment to the charter to say what the charter already says.

Finally, on the issue raised, we agree with the trial court that as between Act 299 and Act 300, Act 300 is the more specific statute. It deals specifically with the power of the CEO to appoint and remove road commissioners. Act 299 does not even address the power of the CEO. Rules of statutory construction dictate that a special statute enacted subsequent to a general statute is an exception to the general regulation. *People v Rodgers,* 18 Mich App 37, 40; 170 NW2d 493 (1969); *Manville v Board of Governors of Wayne State University,* 85 Mich App 628, 636; 272 NW2d 162 (1978); *In re Cole Estate,* 120 Mich App 539, 548; 328 NW2d 76 (1982). This rule also applies when statutes are enacted simultaneously, as in this case. 2A Sutherland, Statutory Construction (Sands rev, 4th ed, 1973), § 51.05, p 315.

One must also conclude that MCL 45.514(d)(ii); MSA 5.302(14)(d)(ii) is more specific because it relates only to counties having more than 1.5 million people. Since MCL 45.514(d)(ii); MSA 5.302(14)(d)(ii) is not a fatally defective local act in violation of Const 1963, art 4, § 29 (see Issue I, *supra),* MCL 45.514(d)(ii); MSA 5.302(14)(d)(ii) must control by virtue of the accepted rules of statutory construction because of its specificity. Accordingly, we conclude that 1982 PA 299 does not supersede

§ 14(d)(ii) of the county charter act or contravene the appointing power given the CEO in § 4.385 of the Wayne County charter.

## IV

*Is the charter invalid because the Governor, lacking an affirmative response from the Attorney General, improperly approved the charter?*

The county charter act describes the manner in which a county charter may be adopted. Section 16 thereof, MCL 45.516; MSA 5.302(16), provides in part:

"The charter shall be submitted to the governor for approval within 30 days after its completion. The charter may be approved by the governor upon written recommendation of the attorney general that it conforms to the provisions of the constitution and statutes of this state. The governor either shall approve or reject the charter within 30 days of its submission."

The Governor approved the charter July 22, 1981. In a letter dated July 17, 1981, the Attorney General recommended to the Governor that "changes be made to accomplish conformance".[3] Defendants contend that the Governor's approval without the Attorney General's express recommendation of approval renders the charter nugatory.

The word "recommendation" has an established usage; it refers to action which is advisory in nature rather than one having any binding effect. *People v Gates,* 41 Cal App 3d 590, 599; 116 Cal

---

[3] The letter from the Attorney General listed some 11 instances where the proposed charter and the implementing legislation did not strictly conform. The letter then stated "[t]he foregoing discusses those charter sections which are at variance with constitutional or statutory law. It is recommended that appropriate changes should be made in such provisions of the charter to conform the charter with the provisions of constitution and statute."

Rptr 172, 178 (1974). Had the Legislature wished
to restrict the power of the governor to approve
the charter, it could easily have done so by provid-
ing that the Governor not approve the charter
unless buttressed by the written recommendation
of the Attorney General. Instead, the Legislature
merely provided for the Attorney General to act in
an advisory capacity. To hold otherwise would be
to render the succeeding sentence nugatory, for
absent the affirmative recommendation of the At-
torney General, the Governor could not approve
the charter. Moreover, to thus delimit the power of
the Governor would run afoul of the separation of
powers principle of Const 1963, art 3, § 2, by virtue
of which the executive power is vested solely in
the Governor, Const 1963, art 5, § 1.

The Attorney General, albeit a constitutional
officer, is a member of the executive branch and
thereby constitutionally subservient to the Gover-
nor as repository of the executive power of the
state. Under the circumstances, the Legislature
must be far more specific if it intends to restrict
the Governor's exercise of a delegated duty and to
make it dependent upon the approval of an infe-
rior officer. In this respect, the Governor's decision
to approve the charter is entitled to great defer-
ence, for the Governor has no less a solemn obliga-
tion, see Const 1963, art 11, § 1, than does the
judiciary to consider the constitutionality of his
every action. See *Rostker v Goldberg,* 453 US 57;
101 S Ct 2646; 69 L Ed 2d 478 (1981).

## V

*Does 1980 PA 7 constitute an impermissible
amendment by implication, contrary to* Alan v
Wayne County, *388 Mich 210; 200 NW2d 628
(1972)?*

This provocative issue is raised by intervening

defendant County Road Association of Michigan. Because intervenor only came into the case upon appeal to this Court, the issue was not discussed by the trial court. Nowhere in the title or object of the act does 1980 PA 7 make any reference to or attempt to amend the county road law, particularly chapter four which established county road commissions, being 1909 PA 283. The only reference to statutes being amended is to laws pertaining to the form of county government. Citing *Alan* and Justice COOLEY in *Mok*[4] for the rule that "you cannot amend statute C even by putting in statute B specific words to amend statute C, unless you republish statute C as well as statute B under Const 1963, art 4, § 25", intervening defendant concludes:

"That is just exactly the issue in this case. The Legislature cannot amend the general highway law, 1909 PA 283, by amending an entirely different statute, 1966 PA 293, unless 1909 PA 283 is republished. * * *

"A rule of reason and equity would also require that the legislative body changing the rights and responsibilities of county road commissions has a duty to make that change very clear to them as opposed to the requirement that the attorney or law members on the county road commission do as thorough a research job as is possible by a legislative body."

Intervening defendant construes *Alan* and *Mok* far too broadly. Contrary to intervenor's assertion, Michigan case law does not prevent amendment by implication. To the contrary, amendment by implication is permitted without republishing or re-enacting every previous statute affected by the new law. As stated by Justice COLEMAN upon sustaining the validity of the "No-Fault Automobile"

---

[4] *Mok v Detroit Building & Savings Ass'n No 4,* 30 Mich 511 (1875).

legislation in *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441, 477; 208 NW2d 469 (1973):

"Amendments by implication are an inevitable by-product of the legislative scheme of government. It boggles the mind to contemplate the laws which would be rendered unconstitutional *ab initio* and the avalanche of litigation which would follow were we to construe § 25 in so extended a manner as to find unconstitutional its effect upon 1972 PA 294."

The no-fault statute then under attack modified the title and added a chapter to the Insurance Code but did not mention or cross-reference to over 200 statutes that were related in some way. Justice COLEMAN noted that because the act was a complete act in itself, did not confuse or mislead, and set forth in full the amendments to the Insurance Code, it did not present the kind of problem to which the rule in *Alan* was directed.

The situation in the case before us is similar. 1980 PA 7, unlike the statute in *Alan,* does not purport to insert words from one statute to another. Instead, it is a complete act in itself. It introduces a new form of government, *viz.:* the charter form, and provides that in any county with a population of more than 1,500,000 the government will be centralized by an elected county executive or chief administrative officer who has the power to appoint department heads. It does not amend the county road law as such. That act continues in force and establishes the status of road commissioners for all regular counties. The only time the provisions of 1980 PA 7 would apply would be if a county voted to adopt the charter form of government. Like no-fault, 1980 PA 7 "is a complete act and does not confuse

or mislead, but publishes in one act for all the world to see what it purports to do". 389 Mich 476. As such, it is "not part of the mischief designed to be remedied" by *Alan* or Const 1963, art 4, § 25.[5] 389 Mich 473.

## VI

*May the stay which was dissolved by the circuit court on April 26, 1983, be retroactively imposed by the circuit court on April 29, 1983, so as to nullify plaintiff's April 27, 1983, order terminating defendants and appointing successor commissioners?*

This question is the sole issue raised on appeal in Docket No. 71499. We find the issue rendered moot by the stay order issued by this Court on May 17, 1983. On May 19, 1983, we clarified the May 17 order by limiting the stay to that portion of the circuit court's April 26 order "which dissolves the temporary restraining order, dated December 30, 1982, which enjoined the plaintiff from discharging the defendant members of the Board of County Road Commissioners or making new appointments to their positions".

The order of stay so issued by this Court precluded discharge of the incumbent road commissioners serving on April 26, 1983, and appointment of their successors pending decision by the Court of Appeals. However, this Court having now determined on the merits in Docket No. 71018 that the trial court did not err in granting summary judg-

---

[5] For other decisions holding that "an act complete within itself, even though repealing by implication another statute, is not one of the evils sought to be prevented by art 4, § 25", see *Charter Twp of Meridian v East Lansing*, 101 Mich App 805, 808; 300 NW2d 703 (1980); *Queen Airmotive, Inc v Dep't of Treasury*, 105 Mich App 231, 235; 306 NW2d 461 (1981).

ment to plaintiff, the order of stay is hereby dissolved.

## CONCLUSION

In summary, defendants contend that despite the people's approval of a charter form of government with strong powers vested in an elected chief executive, despite the Legislature's twice authorizing a new method for appointing and removing road commissioners, and despite the legislative confirmation of such power upon amendment of the county road law in 1982 PA 299—despite all of these affirmative actions, defendants ask us to not give effect to the new charter.

We decline to do so. Pursuant to Const 1963, art 7, § 2, the first constitutional provision to provide for the creation of charter counties, the Legislature passed 1966 PA 293, the charter act, which for the first time implemented the constitutional provision. In 1980 PA 7, the Legislature amended the county charter act adding new sections calling for centralization of power in a strong executive director in counties with a population over 1,500,-000. Among the powers so granted the CEO was the power to appoint and remove county road commissioners. That express power was reconfirmed upon passage of 1982 PA 300. 1980 PA 7 is not a local act in violation of the Michigan Constitution. The population criterion set forth in the statute is reasonably related to the purpose of the enactment, namely, the effective organization of county government in a densely populated area. The Legislature reasonably determined that county government would more effectively operate in a high population county if power were centralized in a single executive who could be held accountable and that the people of such county could

have the choice of whether or not to adopt such form of government. Section 4.385 of the charter clearly confers upon the CEO the power authorized in 1980 PA 7, as amended by 1982 PA 300. Finally, the authority so granted was not superseded or otherwise modified by 1982 PA 299. Accordingly, the trial court's order of summary judgment in favor of plaintiff is affirmed. The trial court's order of stay issued April 29, 1983, and the stays ordered by this Court May 17 and 19, 1983, are vacated.

Affirmed. No costs, a question of public importance being involved.

This opinion shall be given immediate effect. GCR 1963, 821.3.