# Order

**Michigan Supreme Court**
**Lansing, Michigan**

March 26, 2012

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra,
Justices

144691
144768

FRANK HOUSTON, EDNA FREIER,
CHRISTY JENSON, LORETTA COLEMAN,
JIM NASH, DAVID RICHARDS, and
ERIC COLEMAN,
          Plaintiffs-Appellees,

v                                                                          SC: 144691
                                                                           COA: 308724
                                                                           Ingham CC: 12-000010-CZ

GOVERNOR,
          Defendant,
and

OAKLAND COUNTY BOARD OF
COMMISSIONERS,
          Defendant-Appellant.

_____/

FRANK HOUSTON, EDNA FREIER,
CHRISTY JENSON, LORETTA COLEMAN,
JIM NASH, DAVID RICHARDS, and
ERIC COLEMAN,
          Plaintiffs-Appellees,

v                                                                          SC: 144768
                                                                           COA: 308725
                                                                           Ingham CC: 12-000010-CZ

GOVERNOR,
          Defendant-Appellant,
and

OAKLAND COUNTY BOARD OF
COMMISSIONERS,
          Defendant.

_____/

On March 21, 2012, the Court heard oral arguments on the applications for leave to appeal the March 7, 2012 judgment of the Court of Appeals. On order of the Court, the applications are again considered. MCR 7.302(H)(1). In lieu of granting leave to appeal, we REVERSE the judgment of the Court of Appeals. Public Act 280 of 2011, amending the County Apportionment Act is not a "local" act in violation of Const 1963, art 4, § 29.

Plaintiffs make much of the alleged political motivations behind the Act, calling it a "political favor" to the Oakland County Executive and citing numerous supportive editorial comments. As with any redistricting of political maps, the parties here vie to create maps that benefit their own interests, and a dispute with partisan implications has not surprisingly arisen. Notwithstanding this reality, "[t]he validity of legislation can never be made to depend on the motives which have secured its adoption, whether these be public or personal, honest or corrupt." Cooley, Constitutional Law, p 154. See also *Michigan United Conservation Clubs v Secretary of State (After Remand)*, 464 Mich 359, 367 (2001) (CORRIGAN, C.J., concurring) (stating that even if the motive of a legislative body could be discerned as opposed to the motives of individual legislators, "This Court has repeatedly held that courts must not be concerned with the alleged motives of a legislative body in enacting a law, but only with the end result—the actual language of the legislation"). This Court's authority does not extend to considering whether legislation "represents wise or unwise, prudent or imprudent, public policy." *In re Request for Advisory Opinion Regarding Constitutionality of 2011 PA 38*, 490 Mich 295, 302 (2011). Rather, it is our responsibility only to say whether 2011 PA 280 is in violation of Const 1963, art 4, § 29, and there is nothing that is relevant in this regard that can be drawn from the political or partisan motivations of the parties. In short, there is nothing that plaintiffs have identified within the Constitution that prevents a political or partisan legislative body from acting in a political or partisan fashion. Moreover, this Court possesses no special capacity, and there are no legal standards, by which to assess the political propriety of actions undertaken by the legislative branch. Instead, it is the responsibility of the democratic, and representative, processes of government to check what the people may view as political or partisan excess by their Legislature. And it is the responsibility of this Court only to compare the law with the Constitution to ensure that the former does not transgress the limits of the latter. For the reasons that follow, we are persuaded that 2011 PA 280 does not breach Const 1963, art 4, § 29.

In reaching our decision, this Court, as it is always, is engaged in applying the equal rule of law to the best of its ability. That there may be some partisan advantage to one side or another in this decision is simply a function of the fact that there is no *conceivable* decision that could have been reached in which one side or the other could not have asserted that partisan advantage accrued to the other. We believe that a fair review of the decisions of this Court in which some partisan advantage was at issue would make clear that our decisions have been marked by a commitment to a faithful reading of the law. See, e.g., *In re Request for Advisory Opinion*, 490 Mich 295; *Scott v Dir of Elections*, 490 Mich 897 (2011); *Attorney General v Clarke*, 489 Mich 61 (2011).

2011 PA 280 makes three relevant changes in the County Apportionment Act, MCL 46.401 *et seq*.: first, following the next federal census, it limits the number of commissioner districts any county may apportion based upon its population; second, it reassigns apportionment duties to the Board of Commissioners in counties that exceed 1 million residents and that have adopted an optional unified form of county government;

and third, in what we will describe as the "transitional" provision of the Act, § 1(2), amending MCL 46.401(2), it requires any county not in compliance with the Act to reapportion within 30 days of the law's effective date. This latter change nullifies Oakland County's 25-commissioner district plan drawn under preamendment apportionment rules, and establishes in its place a 21-commissioner district plan to be drawn by the Board. As a practical matter, because Oakland County is the only county that will not be in compliance with the law on its effective date, only Oakland County will have to reapportion during the transitional period.

It is a well-established rule that a "statute is presumed to be constitutional unless its unconstitutionality is clearly apparent." *McDougall v Schanz*, 461 Mich 15, 23 (1999). Further, any "attempt to segregate any portion or exclude any portion [of a statute] from consideration is almost certain to distort the legislative intent." *Robinson v City of Lansing*, 486 Mich 1, 16 (2010). Rather, when interpreting a statute, its words "should not be construed in the void, but should be read together to harmonize the meaning, giving effect to the Act as a whole." *General Motors Corp v Erves*, 399 Mich 241, 255 (1976).

Const 1963, art 4, § 29 provides that the Legislature "shall pass no local or special act where a general act can be made applicable," unless approved by a two-thirds vote of the Legislature and by a "majority of the electors voting thereon in the district affected." Whether 2011 PA 280 constitutes a local act must be determined in accordance with the principles set forth in the preceding paragraph. Indeed, the fact that Const 1963, art 4, § 29 refers to the "act" underscores the necessity of viewing the transitional provision, or any other statutory provision, within the larger context of the act itself.

In *Dearborn v Bd of Supervisors*, 275 Mich 151, 155-156, 157 (1936), this Court established a two-part test for determining whether an act is general or local. First, the limiting criteria of the act must be reasonably related to the overall purpose of the statute. Second, the act must be sufficiently open-ended so that localities may be brought within the scope of its provisions as such localities over time meet the required criteria. "The probability or improbability of other [localities] reaching the statutory [criteria] . . . is not the test of a general law." "It must be assumed" that other localities may come to meet the criteria. *Id*. at 157.

2011 PA 280 satisfies the *Dearborn* test. First, the limiting criteria are reasonably related to the overall purpose of the Act. Here, the overall purpose is to limit the number of districts a county may apportion, and the population criteria set forth in the Act seem a reasonable means of achieving that purpose. Second, the Act is open-ended. It provides various population ranges and places corresponding limits on the number of districts for every county within those ranges. As a county's population increases above or below a given range, the number of districts that may be apportioned by that county will increase or decrease respectively.

That the transitional provision, requiring compliance with the Act within 30 days by counties whose apportionment does not currently satisfy the requirements of 2011 PA 280, practically applies only to Oakland County frustrates neither of the elements of *Dearborn*. As explained above, the transitional provision must be read and harmonized with the act as a whole. In that context, the transactional provision directs how the act will operate until the next census triggers a new reapportionment, just as a nearly identical transitional provision accomplished the same when the county apportionment act was initially enacted in 1966. 1966 PA 261. A similar transitional provision was also upheld by this Court in *Chamski v Cowan,* 288 Mich 238, 257 (1939).

Here, the transitional provision neither disengages the limiting criteria from the overall purpose of the Act, nor undermines the conclusion that the Act broadly governs all of the counties within the state. Rather, § 1(2) merely facilitates the transition between a legal environment of disparate apportionment practices within the counties and a legal environment of uniform practices. Absent a transitional period during which some counties must necessarily be treated differently from others, it would be impossible for the Legislature to make general, uniform changes to public policy pertaining to local government. That is, to bring counties that are out of compliance with the Legislature's preferred public policy into compliance, and to establish uniform policy, those counties out of compliance must be treated differently during the transition or else uniformity can never be achieved. The transitional provision here accomplishes just such a purpose by ensuring that Oakland County will not be the only county that operates outside of the apportionment limits of the Act until the next census.

In assessing whether a law is constitutional under Const 1963, art 4, § 29, we must view the law's impact *as a whole*, and not merely at a single instant in time—herein, according to plaintiffs, at the instant at which the law becomes effective and the transitional provision is momentarily triggered. A typical regulatory law may pertain to local governments in a wide variety of ways, in terms of substantive and temporal and procedural obligations, and it cannot be that we can isolate a single section or subparagraph or clause from that law and conclude that the law is "local" if viewed in a discrete fashion it affects individual local governments in a disparate fashion. Imagine, for example, that the Legislature determined to limit the number of distilleries (or any other facility), and enacted a law limiting any county with a population under 100,000 to one distillery, and requiring compliance within 180 days. At the time, Alpena alone among counties under 100,000 had more than one distillery. During the 180-day transitional period, Alpena would obviously be treated differently from every other county, and would alone be required to close one of its distilleries in order to conform to the law. Such a transitional provision would not fairly be characterized as an unconstitutional local act under Const 1963, art 4, § 29. That is, if an outlying local government cannot be required to comply with a general law for the very reason that they are at present an outlier, efforts to render public policies more uniform by the Legislature

will perpetually, and wrongly, be frustrated on the grounds of "unconstitutionality." Perhaps in a particular instance, the achievement of such uniformity might be unwise or imprudent, but it would not be unconstitutional for that reason. It seems perfectly in accord with the Constitution that a transitional provision might be set forth within a statute so that the law might proceed in an orderly fashion from one set of rules to a different set of rules—from one regulatory order to another—and that such transitional provision be allowed, if only temporarily, to treat covered entities in a distinctive fashion in order to achieve the uniform public policy sought by the Legislature. This not only does not frustrate the general effect of legislation, but may actually be necessary to achieve such a general effect. See *Chamski*, 288 Mich at 258 (stating that transitional provisions "promote speedy action on the part of counties having the required population").

2011 PA 280 establishes apportionment limits for every county within the state. Indeed, as conceded by plaintiff at oral argument, if the Legislature "had imposed this very same Act" *before* Oakland County had reapportioned following the last census, it would not constitute a local act. Thus, it seems beyond dispute that the Act's *overall* effect is general. That an otherwise general act requires some transition period in order to fully achieve its objectives does not by itself transform such act into a "local" act. The transitional provision is a necessary component of the Legislature's intention to give general and *uniform* effect to 2011 PA 280. While the Legislature was under no obligation to give such uniform effect to the statute, there is also nothing within the Constitution that either prohibits the Legislature from effecting this end or that compels the conclusion that a general act is thereby transformed into a local act.

The Court of Appeals held to the contrary that, although 2011 PA 280 was generally constitutional, the transitional provision was not because "Oakland County alone would be required to reduce the number of members on its county board of commissioners and to undertake a second reapportionment of its county board of commissioners within 30 days after the effective date of the act." *Houston v Governor*, ___ Mich App ___, ___ (2012) (issued March 7, 2012, Docket Nos. 308724 and 308725), slip op at 4. However, it erred by isolating the transitional provision, and analyzing it independent of the larger Act. Just as *Robinson* forewarned, this separation of the transitional provision from the rest of the Act "distort[ed] the legislative intent" and led the Court of the Appeals astray.

The Court of Appeals also relied on our decision in *State v Wayne Co Clerk*, 466 Mich 640 (2002). In *Wayne Co Clerk*, the relevant act ostensibly required any city with a population of 750,000 or more *and* a city council composed of nine at-large members to place a specific proposal on its August 6, 2002 ballot. Because Detroit was the only city that could satisfy those criteria by the date certain, we held that the act constituted "local" legislation.

*Wayne Co Clerk* is clearly distinguishable from the case at hand because there the date certain and the population criterion rendered the entire act closed-ended. No locality other than Detroit could ever have been brought within the operation of the act. Here, by contrast, the overall purpose of the Act is to limit the number of districts each county may apportion—an indisputably general purpose. That Oakland County may be the only county immediately out of compliance with the Act, and therefore immediately affected by the transitional provision, does not frustrate the Act's general applicability because every county remains potentially subject in the future to the limitations established by 2011 PA 280.

For these reasons, we believe that the Court of Appeals erred by finding that the transitional provision in 2011 PA 280 constituted a "local" act in violation of Const 1963, art 4, § 29. With regard to plaintiffs' additional arguments that 2011 PA 280 violates Const 1963, art 9, § 29, and abridges the right of an elector to challenge any apportionment plan submitted under § 1(2), we adopt the reasoning of the Court of Appeals partial concurrence and partial dissent.

MARILYN KELLY, J. (*dissenting*).

I respectfully dissent because the Court of Appeals made the correct ruling in this politically charged case. MCL 46.401(2) is unconstitutional and should be severed from the County Apportionment Act.

SECTION 1(2) APPLIES ONLY TO OAKLAND COUNTY

The law and its application to the facts of this case are straightforward and simple. Last year, the Legislature enacted 2011 PA 280,[1] which amended the County Apportionment Act, for the stated purpose of reducing the size and cost of local government. The most significant change, found in MCL 46.401(1) and MCL 46.402, reduces the maximum number of commissioners any county may have from 35 to 21.[2] The number of commissioners per county is determined by that county's population.

[1] MCL 46.401 *et seq*.

[2] MCL 46.401(1), as amended by 2011 PA 280, states that "each county shall apportion the county into not less than 5 nor more than 21 county commissioner districts . . . ."

MCL 46.402, as amended by 2011 PA 280, provides:

| County Population | Number of Commissioners |
|---|---|
| Under 5,001 | Not more than 7 |
| 5,001 to 10,000 | Not more than 10 |
| 10,001 to 50,000 | Not more than 15 |

MCL 46.401(2) sets a 30-day window from the effective date of the amended act for counties to get into compliance.[3]  The pivotal difference between MCL 46.401(1) and MCL 46.401(2) is this: Subsection 1 will affect every county that exceeds a population of 50,000 for the life of the act.  But subsection 2 will affect only those counties whose population exceeds 600,000 and that have more than 21 commissioners on March 28, 2012.[4]  It is undisputed that Oakland County is the only county that will be affected by the amended compliance provision in MCL 46.401(2).  This flaw renders the subsection unconstitutional.

## SECTION 1(2) IS UNCONSTITUTIONAL

The Michigan Constitution prohibits the Michigan Legislature from passing local or special acts unless they obtain a specified number of votes, which did not occur in this case.[5]  This Court determined long ago that a legislative enactment that is limited to a

---

| | |
|---|---|
| ~~50,001 to 600,000~~over 50,000 | ~~Not more than~~ 21 |
| ~~600,001 to 1,000,000~~ | ~~17 to 35~~ |
| ~~Over 1,000,000~~ | ~~25 to 35~~ |

[3] MCL 46.401(2), as amended by 2011 PA 280, states:

> If a county is not in compliance with section 2 on the effective date of the amendatory act that added this subsection, the county apportionment commission of that county shall, within 30 days of the effective date of the amendatory act that added this subsection, apportion the county in compliance with section 2.  For subsequent apportionments in a county that is apportioned under this subsection, the county apportionment commission of that county shall comply with the provisions of subsection (1).

[4] The practical impact of subsection 2 is that the act affects only those counties with a population of over 600,000 that have more than 21 commissioners.  The prior population threshold for a maximum of 21 commissioners was 50,001 to 600,000.  Therefore, any county under this threshold will not be immediately affected.  There are only 4 counties in Michigan with populations over 600,000:  Wayne, Macomb, Kent and Oakland.  Wayne and Macomb Counties are charter counties, which are not governed by this act.  (See MCL 45.501 to 45.521.)  Kent County has a population of 602,000, but because it already has only 21 commissioners, it is unaffected by the changes to MCL 46.401.

[5] Const 1963, art 4, § 29 provides:

> The legislature shall pass no local or special act in any case where a general act can be made applicable, and whether a general act can be made

specific geographical region constitutes a local or special act.[6]  The fact that it contains a limitation, like a population threshold, does not necessarily render it a local act.[7]  It will be deemed a local act if (1) it is not open-ended and (2) its population thresholds do not bear a reasonable relationship to its purpose.[8]

The Court declared a challenged statute unconstitutional in *Michigan v Wayne Co Clerk*[9] because it was not open-ended.  We stated that "population-based statutes have been upheld against claims that they constitute local acts where it is possible that other municipalities or counties can qualify for inclusion if their populations change," but that "where the statute cannot apply to other units of government, that is fatal to its status as a general act."[10]  The same flaw presented in the statute in *Wayne Co Clerk* exists here.  MCL 46.401(2) cannot and will never apply to any unit of government aside from Oakland County.

This is because no other county could possibly be subject to its compliance provision by March 28, 2012.  That is the effective date of the amended County Apportionment Act.  It is a date certain, and it will never occur again.  The only county in the state that will have a population of over 600,000 and more than 21 commissioners on March 28, 2012, is Oakland County.  As the Court of Appeals majority aptly stated, "[i]t is implicit in the holding in *Wayne Co Clerk* that, where a statute can practically affect only one municipality within a specific time frame, practically impossible scenarios should not remove the statute from being considered an unconstitutional act."[11]

---

applicable shall be a judicial question.  No local or special act shall take effect until approved by two-thirds of the members elected to and serving in each house and by a majority of the electors voting thereon in the district affected.  Any act repealing local or special acts shall require only a majority of the members elected to and serving in each house and shall not require submission to the electors of such district.

It is undisputed that the voting requirements for the Legislature to pass a local act were not present in this case.

[6] *Advisory Opinion on Constitutionality of 1975 PA 301*, 400 Mich 270, 287 (1977).

[7] See *Michigan v Wayne Co Clerk*, 466 Mich 640 (2002); *City of Dearborn v Wayne Co Bd of Supervisors*, 275 Mich 151 (1936); *Lucas v Bd of Rd Comm'rs*, 131 Mich App 642, 652 (1984).

[8] *City of Dearborn*, 275 Mich at 155-156.

[9] *Wayne Co Clerk*, 466 Mich 640.

[10] *Id*. at 642-643.

[11] *Houston v Governor*, ___ Mich App ___ (2012) (issued March 7, 2012, Docket Nos. 308724 and 308725), slip op at 5.

The majority relies on *Chamski v Cowan*[12] for the proposition that a transitional provision may be necessary to achieve a general effect. But the transitional provision in *Chamski* did not apply to only one county for all time. Moreover, *Wayne Co Clerk*, not *Chamski*, is the only case on point. Like Oakland County in the present context, in *Wayne Co Clerk* only Detroit was affected by the act's criteria on the date certain. For that reason, the act was deemed unconstitutional.

## SECTION 1(2) MUST BE SEVERED TO ALLOW THE ACT TO SURVIVE CONSTITUTIONAL SCRUTINY

Because the remainder of the County Apportionment Act can stand on its own without the 30-day compliance provision, the Court of Appeals properly severed MCL 46.401(2).[13] The majority would have us hold that where part of a statute is unconstitutional, it need not be removed if the balance of the statute is constitutional. This is simply not accurate. Rather, "[t]he constitutionality of a law that is complete in itself, without certain provisions that may be omitted, will remain constitutional if such objectionable parts are omitted."[14] Just as the Court of Appeals held, this section can be severed and the balance of the act will stand.

## CONCLUSION

Unlike so many cases that come before this Court, this one is easily resolved and does not fall in the category of a "close call." The Michigan Legislature has enacted a statute that requires reapportionment of certain county boards of commissioners. By its terms, a portion of this statute can apply to only one county, Oakland County, on the date it mandates reapportionment. Under Michigan law, such a statute is deemed a local act. And local acts are unconstitutional.

---

[12] *Chamski v Cowan*, 288 Mich 238 (1939).

[13] *Houston*, ___ Mich App at ___, slip op at 6.

[14] *People v McMurchy*, 249 Mich 147, 159; 228 NW 723, 727-28 (1930); see also MCL 8.5.

The part of the statute that renders it a local act is the section that requires reapportionment of county boards of commissioners on the effective date of the act, March 28, 2012. The flawed section has that effect because only Oakland County falls under the act on that date. On later dates, other counties could feasibly fall under the statute.

The mistake the majority makes is that it reads the constitutionally flawed section along with the rest of the statute, viewing the statute's impact "as a whole." But the whole, however read, cannot cure the constitutional flaw of one of its parts. The question that must be resolved is not whether the whole can cure the defective section. It cannot. The question is whether the whole is fatally infected by the unconstitutionality of the section.

If it is possible to sever the constitutionally flawed section of a statute while the remainder of the statute could function, the court should sever the flawed section. That is what the Court of Appeals did in this case. This Court should affirm its decision.

CAVANAGH, J., joins the statement of MARILYN KELLY, J.

HATHAWAY, J. (*dissenting*).

I agree with Justice MARILYN KELLY that the Court of Appeals reached the correct decision in this politically charged case. I would affirm the Court of Appeals' decision that 2011 PA 280, § 1(2), amending MCL 46.401(2), is an unconstitutional local act.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

March 26, 2012

Clerk

t0321